UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

TRATHONY GRIFFIN, MICHAEL GODWIN, and
FRANK CALLACE,

          Plaintiffs,

   - against -

SIRVA, INC.; ALLIED VAN LINES, INC.; and
ASTRO MOVING AND STORAGE CO., INC.,

          Defendants.

------------------------------------------------------------------X

CV-11-1844 (MKB)(WDW)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION OF DEFENDANTS SIRVA AND ALLIED FOR SUMMARY JUDGMENT

Plaintiffs submit this memorandum of law in opposition to the motion of defendants SIRVA, Inc. ("SIRVA"), and Allied Van Lines, Inc. ("Allied"), for summary judgment. Many courts have held that Federal laws governing deregulation in the airline and trucking industries do not preempt state laws prohibiting discrimination in employment. SIRVA and Allied, which required Astro, without any individualized consideration of the employees' circumstances, to dismiss plaintiffs Trathony Griffin ("Griffin") and Michael Godwin ("Godwin") because of their criminal convictions, are liable for denying Griffin and Godwin employment in violation of New York law. The motion of SIRVA and Allied for summary judgment should be denied.

I.  FEDERAL TRANSPORTATION DEREGULATION LAW DOES NOT PREEMPT STATE ANTI-DISCRIMINATION STATUTES.

SIRVA and Allied contend that the Interstate Carrier Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. §§ 101 et seq., preempts the New York State Human Rights Law ("Human Rights Law"), N.Y. Executive Law § 296 et seq. The Second Circuit, the New York State Court of Appeals, and almost every other court which has decided the question, however, have held otherwise.

The ICCTA provides, "A State . . . may not enact or enforce a law . . . related to a price, route, or service of any carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). As SIRVA and Allied point out, this language copies the language of the air-carrier preemption provision of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(4)(B)(i), and has been interpreted in the same manner. Rowe v. New Hampshire Motor Transport Ass'n, 552 U.S. 364, 370 (2008).

SIRVA and Allied bear "the considerable burden of overcoming the 'starting presumption that Congress did not intend to supplant state law.'" DeBuono v. NYSA-ILSA Medical and Clinical Serv., 520 U.S. 806, 814 (1997)(quoting New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995)). The United States Supreme Court has noted the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). The "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." Gade v. National Solid Wastes Mgt. Ass'n, 505 U.S. 88, 98 (1992). With respect to the

ADA, according to the Supreme Court, state laws will be preempted if they "seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier." American Airlines, Inc. v. Wolens, 513 U.S. 219, 229 n.5 (1995). Conversely, the High Court has held that the ADA does not preempt state statutes which affect "price, route, or service" in "'too tenuous, remote, or peripheral a manner.'" Morales v. Trans World Airlines, Inc., 504 U.S. 374, 390 (1992)(quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983)). Hiring and firing laborers is a subject remote from economic competition in the trucking industry, the purpose of the ICCTA.

The Second Circuit has addressed this issue head-on. The appellate court has held that "compliance with the . . . state human rights laws would not interfere with the airline's ability to comply with" Federal law. Abdu-Brisson v. Delta Air Lines, Inc., 128 F.3d 77, 84 (2d Cir. 1997). "Most central to this analysis, [the defendant] is unable to establish that enforcing the . . . state human rights laws in this case would frustrate the purpose of the ADA." Id., at 84. The Court found that the plaintiffs' New York Human Rights Law claims were not preempted. Id., at 85-86.

District Courts in this Circuit have followed the Second Circuit's holding "that discrimination claims are not preempted by the ADA." Ulysse v. AAR Aircraft Component Services, 841 F. Supp. 2d 659, 675 (E.D.N.Y. 2012)(whistleblower claims not preempted); Desardouin v. United Parcel Service, Inc., 285 F. Supp. 2d 153, 161-65 (D. Conn. 2003)(race and ethnic discrimination claims not preempted). In addition, the Third, Fifth, Sixth, Ninth, and Eleventh Circuits all have held that neither the ADA nor the ICCTA preempt a variety of state employment laws. Gary v. Air Group, Inc., 397 F.3d 183 (3d Cir. 2005)(whistleblower claim);

3

Anderson v. American Airlines, Inc., 2 F.3d 590 (5th Cir. 1993)(workers compensation retaliation); Wellons v. Northwest Airlines, Inc., 165 F.3d 493, 496 (6th Cir. 1999)(race discrimination and related common-law torts); Air Transport Ass'n v. City and County of San Francisco, 266 F.3d 1064, 1070-75 (9th Cir. 2001)(ordinance barring discrimination based on race, color, creed, religion, national origin, ancestry, age, sex, sexual orientation, gender identity, disability, HIV/AIDS status, domestic partner status, and marital status); Parise v. Delta Airlines, Inc., 141 F.3d 1463, 1467 (11th Cir. 1998)(age discrimination). District Courts in other Circuits as well "have concluded that state-law employment discrimination claims are not preempted by the ADA." LaRosa v. United Parcel Service, Inc., 23 F. Supp. 2d 136, 140-43 (D. Mass. 1998)(age and handicap discrimination); Meyer v. United Airlines, Inc., 624 F. Supp. 2d 923, 932 (N.D. Ill. 2008)(whistleblower retaliation).

The New York Court of Appeals also has held that the ADA does not preempt the state's Human Rights Law. Delta Air Lines v. New York State Div. of Human Rights, 91 N.Y.2d 65, 70-72, 666 N.Y.S.2d 1004, 1006-07, 689 N.E.2d 898, 900-01 (1997). This ruling is consistent with the rulings of other state appellate courts, including in two states mentioned by SIRVA and Allied. Nokes v. Aspen Aviation, Inc., 104 P.3d 247 (Col. App. 2005)(state common-law employment termination claims not preempted); Thomas v. United Parcel Service, Inc., 241 Mich. App. 171, 176-81, 614 N.W.2d 707, 709-13 (2000)(race and gender discrimination); Selim v. Pan American Airways Corp., 889 So. 2d 149, 156-60 (Fl. App. 2004)(national origin/race discrimination).

SIRVA and Allied contend that they "cannot possibly operate under a 50-state regulatory 'patchwork'" of anti-discrimination statutes. Defendants SIRVA's and Allied's Memorandum of

4

Law in Support of Motion for Summary Judgment ("Def. Mem.") 9 (footnote omitted). "[T]o the extent that there is variation in state anti-discrimination laws," however, "such variation is 'little different from generally applicable tax, environmental, or blue sky laws, which as a general matter are not preempted under the ADA." LaRosa, 23 F. Supp. 2d, at 143 (citing Abdu-Brisson, 128 F.3d, at 79). The Second Circuit specifically considered that "the scope of the protected group" under state anti-bias laws "may vary from jurisdiction to jurisdiction," and rejected this circumstance as supporting preemption. Abdu-Brisson, 128 F.3d, at 84; see also, Aloha Islandair Inc. v. Tseu, 128 F.3d 1301, 1304 n.4 (9th Cir. 1997)(rejecting conflicting state laws as ground for preemption of disability discrimination statute). If the fact that each state's laws are different were controlling, state laws would always be preempted.

SIRVA and Allied also allege increased costs resulting from compliance with the Human Rights Law, affecting the companies' services and prices. Def. Mem., at 11-12. The Second Circuit, however, in a detailed analysis, concluded that "while in the abstract," the costs of adherence to the Human Rights Law "could affect price, . . . not every airline cost has the requisite connection with and effect on fares to justify preemption." Abdu-Brisson, 128 F.3d, at 84. "[A]lthough enforcement of the claims may have some effect on prices, routes or services, nothing in the record suggests that this effect is the type of effect which Congress intended to prohibit under the ADA." Id., at 86. The state law's effect on price must be more direct than merely an increase in costs.

A state law is preempted only "if the law binds the air carrier to a particular price, route or service and thereby interferes with competitive market forces within the air carrier industry." Air Transport Ass'n, 266 F.3d, at 1072. The costs of providing domestic partner employment

5

benefits, for example, "are a small, if not inconseqential, fraction of the Airlines' costs," and are therefore "not enough to compel the Airlines to change their routes and services." Id., at 1074-75 (footnote omitted). Although enforcement of a state's anti-discrimination statutes could conceivably cause an "economic cost for the defendant," and may even, "in some instances, cause the airline to decide to make changes in its operations," the "imposition of liability . . . does not sufficiently interfere with the objectives of airline deregulation to warrant preemption." Duncan v. Northwest Airlines, Inc., 208 F.3d 1112 (9th Cir. 2000). The increase in "supervisory and administrative costs" imagined by SIRVA and Allied, and any theoretical indirect effect on prices, Def. Mem., at 5, is too tenuous a connection to trigger preemption.

SIRVA and Allied also argue that the Human Rights Law has been implicitly preempted by a handful of Federal regulations touching on the employment relationship. The existence of an "express definition of the pre-emptive reach of a statute . . . supports a reasonable inference that Congress did not intend to pre-empt other matters." Freightliner Corp. v. Myrick, 514 U.S. 280, 289 (1995). In other words, since the ICCTA expressly preempts state laws regarding price, routes, or services of motor carriers, then presumably there is no "implied" preemption, and states may legislate in all other areas. Here, SIRVA and Allied cite regulations dealing primarily with drug and alcohol testing, but also concerning driver license requirements, driver training, schedules, and maintenance of equipment. Def. Mem., at 13. The Federal imposition of mandatory drug testing and caps on truck drivers' hours has nothing to do with employment discrimination actions, which "'typically have been held to fall outside the scope of the ADA's preemption clause.'" Ulysse, 841 F. Supp. 2d, at 679 (quoting Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1259 (11th Cir. 2003)). None of the cited regulations allows, prohibits, or in any

way governs discrimination in employment. These focused regulations on specific Federal concerns cannot preempt the Human Rights Law.

In the end, SIRVA and Allied cannot establish that the Human Rights Law, or any state employment-related statute for that matter, actually interferes with the Federal statutes' purposes of air and motor carrier deregulation, the necessary showing to establish preemption. The Second Circuit concluded that "because compliance with the city and state human rights laws would not interfere with the airline's ability to comply with the ADA, because the ADA did not prescribe what constituted discrimination against airline employees, and because a finding either for or against the airline would not frustrate the purpose of the ADA, the ADA did not preempt the plaintiffs' claims." Abdu-Brisson, 128 F.3d, at 84. "The purpose of the ADA is airline deregulation permitting more effective competition," and employment discrimination claims are "too attenuated with regard to an impact on air carrier prices and services and . . . too far removed from the field of air carrier competitiveness and efficiency to be within the scope of ADA preemption." Sakellaridis v. Polar Air Cargo, Inc., 104 F. Supp. 2d 160, 163 (E.D.N.Y. 2000); Ulysse, 841 F. Supp. 2d, at 675. Put simply, "Congress intended only to restrict State regulation of airline [or ground carrier] fares, routes, and services, not State regulation of employment practices." Delta Air Lines, 91 N.Y.2d, at 70-71, 666 N.Y.S.2d, at 1006, 689 N.E.2d, at 900. Congress did not intend to make it legal to discriminate in New York.

## II. SIRVA AND ALLIED DENIED EMPLOYMENT TO GRIFFIN AND GODWIN.

Point II of the memorandum of law of SIRVA and Allied is premised on the point's first sentence. Def. Mem., at 14-23. That sentence, however, is incorrect, rendering the entire subsequent nine-page discussion off-point and academic.

SIRVA and Allied state, "The New York statutory provisions at issue in this case expressly apply only to a complainant's 'employer.'" Def. Mem., at 14 (no citation for quote). To the contrary, the drafters of the Executive Law provision here took great pains precisely to avoid limitation of the law's applicability to employers.

A comparison with other sections of the law plainly demonstrate this legislative intent. The provision barring employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, and domestic violence victim status, is expressly limited to an "employer or licensing agency." Exec. Law § 296(1)(a). The prohibition on discrimination in training programs applies only to an "employer, labor organization, employment agency or any joint labor-management committee." Exec. Law § 296(1-a). The requirement that a disabled employee be reasonably accommodated covers "an employer, licensing agency, employment agency or labor organization." Exec. Law § 296(3)(a). The law imposes a religious accommodation requirement on "any employer, or an employee or agent thereof." Exec. Law § 296(10)(a).

The portion of the statute at issue in this case, however, is not so circumscribed. The ban on discrimination based on criminal record makes it unlawful for "any person, agency, bureau, corporation or association . . . to deny . . . employment to any individual" on the prohibited basis.

8

Exec. Law § 296(15). Furthermore, the statute also makes it unlawful for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article ['Human Rights Law'], or to attempt to do so." Exec. Law § 296(6). "Person" is defined as including "one or more individuals, partnerships, associations, corporations, legal representatives, trustees in bankruptcy, or receivers." Exec. Law § 292(1). There is no requirement that a respondent be an employer.

Exploration of whether SIRVA and Allied are plaintiffs' "employers," therefore, while perhaps interesting, is wholly immaterial. Plaintiffs may or may not be employees of SIRVA and Allied, but that question is beside the point. The critical inquiry is whether defendants have denied employment to Griffin and Godwin, or whether SIRVA or Allied compelled or coerced Astro to dismiss Griffin and Godwin.

The undisputed facts establish that the actions of SIRVA and Allied are sufficient to establish the companies' liability under the Human Rights Law. The Background Investigation Consent forms, which Griffin and Godwin were required to execute, authorize "SIRVA, Inc., and/or its agents to investigate" the signer's criminal history. The forms also release "SIRVA, Inc. and/or its agents" from liability. SIRVA's and Allied's Statement of Material Facts ("Def. 56.1 Statement"), Exs. I, J. The background check reports on Griffin and Godwin were entitled, "HireRight Report to SIRVA." Id., Exs. K, L. The alert to defendant Astro Moving and Storage Co., Inc. ("Astro"), that Griffin and Godwin did not meet "company standards" identifies the "account" as SIRVA. Lichten Dec., Ex. F. Letters received by Griffin and Godwin advised them that, "as part of its background certification process, SIRVA and its affiliated carriers, Allied Van Lines and North American Van Lines (collectively 'SIRVA'), obtains or requires others to

obtain, consumer reports regarding potential laborers. These reports assist us in evaluating individuals who are qualified to interact with SIRVA's customers." Lichten Dec., Ex. G. SIRVA's contention that it is strictly "a holding company" which "merely owns the outstanding stock of its subsidiary companies and does not produce products or provide services itself," is somewhat belied not only by the above history but also by the fact that SIRVA has an Agent Resource Team and a Safety and Fleet Registration Department. Supporting Statement of Shenan Hoffacker ¶¶ 1-3; Supporting Statement of Mark Davison ("Davison Statement") ¶¶ 1-4. SIRVA played a major role in critical events in this case.

Allied admits that it requires the employees of Astro "to be screened for significant criminal histories that disqualify such . . . employees from participating in Allied's interstate moving jobs." Davison Statement, at ¶ 12. The company further admits that a felony conviction for "any sexual offense . . . mandates the permanent disqualification from any jobs performed by an agent under Allied's interstate authority." Davison Statement, at ¶ 17. (Actually, misdemeanor convictions mandate disqualification as well. Def. 56.1 Statement, Ex. G, at 2.) Finally, Allied admits that Astro is responsible to Allied "not to allow unqualified . . . employees to work on Allied's interstate shipments." Davison Statement, at ¶ 21. Allied indisputably was a key actor in the discharges of Griffin and Godwin.

It is not necessary for Griffin and Godwin to prove that SIRVA and Allied were their employers. They need only establish that the companies denied them employment or compelled Astro to deny them employment. The uncontested facts adequately show that if not for the actions of SIRVA and Allied, Griffin and Godwin would still be laborers at Astro.

## III. THE UNDISPUTED FACTS ESTABLISH A VIOLATION OF NEW YORK LAW.

The automatic disqualification rules of SIRVA and Allied are unlawful on their face, and summary judgment on liability should be granted on that ground to Griffin and Godwin. Whether the appropriate consideration of the statutory factors nevertheless would have led to the discharge of Griffin and Godwin cannot be determined as a matter of law. The motion of SIRVA and Allied for summary judgment therefore should be denied.

### Automatic Disqualification

SIRVA and Allied do not address plaintiffs' contention that what Allied describes as its "Certified Labor Program" is a per se violation of the Human Rights Law because that program's Adjudication Guidelines do not consider each of the mandated eight factors. As plaintiffs explained in Point I of their Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem."), when a person is facing discharge because of his criminal record, eight factors must be considered on a case-by-case basis, including "[a]ny information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct." N.Y. Correction Law § 753(1)(g). The Adjudication Guidelines's rule excluding any person with a conviction for a sexual offense, no matter what the person's particular situation, no matter what the circumstances of the offense, no matter his age at the time of the offense, no matter how long ago the offense occurred, plainly violates the letter of the law.

Allied suggests that the company complied with the statute because, in "establishing its Adjudication Guidelines, Allied considered numerous relevant factors," including some which appear to be similar to the statutory factors. Def. Mem., at 24; compare, Davison Statement, at

¶ 18(A), (B), (I), with, Corr. Law § 753(1)(a), (d), (f). This approach, of necessity, cannot take into account information produced by the employee. Corr. Law § 753(1)(g). More broadly, though, the New York law requires that all factors be taken into account at the time of the decision, not on some general level years before the person even applied for employment. Acosta v. New York City Dep't of Educ., 16 N.Y.3d 309, 316, 3 20, 921 N.Y.S.2d 633, 635, 638, 946 N.E.2d 731, 733, 736 (2011). The Adjudication Guidelines, as a matter of law, do not comply with the Human Rights Law.

Remedy

Allied contends that it now has "evaluated the eight Section 753 factors" and concludes that this Court should find that they "weigh in favor of excluding plaintiffs Griffin and Godwin." Def. Mem., at 25. Given the sharp dispute of fact concerning the nature of the laborer positions held by Griffin and Godwin, the question of whether proper consideration of the factors would in any event bar Griffin and Godwin from employment must go to the jury. Plaintiffs, who did not at first anticipate this factual dispute, now recognize that material disputes of fact preclude summary judgment for plaintiffs regarding remedy. Plaintiffs therefore withdraw the argument advanced in Point II of their initial memorandum of law.

Summary judgment, of course, is only appropriate where the evidence, viewed in the light most favorable to the non-moving party, shows "there is no genuine issue of any material fact and the moving party is entitled to a judgment as a matter of law." Vacold, L.L.C. v. Cerami, 545 F.3d 114, 121 (2d Cir. 2008). For there to be a "genuine" issue of material fact, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986). Therefore, a court may grant a motion for summary judgment "only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." Piesco v. Koch, 12 F.3d 332, 343 (2d Cir. 1993).

Plaintiffs assert that this standard has been met regarding defendants' violation of the Human Rights Law. Allied admits that it uses per se rules to disqualify laborers and does not engage in the eight-factor case-by-case consideration required by the statutes. The remedy for this violation, however, is in sharp dispute. SIRVA and Allied contend that plaintiffs are not entitled to any back pay because consideration of the eight factors would still have led to the discharge of Griffin and Godwin. Def. Mem., at 29. Plaintiffs now contend that the question of whether there is a "direct relationship" between the "previous criminal offenses" and the "specific . . . employment . . . held by" Griffin and Godwin, or whether the "continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public," are issues for the jury. Corr. Law § 752. If the jury finds in favor of Griffin or Godwin on these issues, they would be entitled to compensatory damages, including back pay. Exec. Law § 297(9). If not, Griffin and Godwin would be entitled to a declaratory judgment that the Adjudication Guidelines violate New York law.

SIRVA and Allied claim a "direct relationship" between the criminal offenses and the "specific employment" at issue here. They base that assertion on a description of that specific employment as entailing the performance of tasks "in close proximity with the customers and their families or employees," often involving "unsupervised contact with customers' children,

other family members and valuable personal property in their homes." Davison Statement, at ¶¶ 7-8. Griffin, however, claims, "No part of my job as laborer required any contact with, or reason to be in close proximity to, relatives of customers," and that he "never met a child, supervised or unsupervised, inside a home on any job" in the three years Griffin worked for Astro. Reply Declaration of Trathony Griffin ¶¶ 4-6. (SIRVA and Allied do not explain the significance of their reference to "valuable personal property.") This factual dispute regarding the nature of the jobs held by Griffin and Godwin can only be resolved by a jury.

The larger question, the existence of a "direct relationship" or an "unreasonable risk," also cannot be decided as a matter of law. Plaintiffs, in their initial memorandum, have surveyed New York precedent showing that the requisite connection between the convictions and the position is not present in this case. Pl. Mem., at 6-10. The cases cited by SIRVA and Allied from other jurisdictions do not support defendants' position. In a Wisconsin case, a court found that a nursing home employee who was convicted, after his hire, of killing a nursing home patient could be discharged under the Wisconsin statute. County of Milwaukee v. Labor and Industry Review Comm'n, 139 Wis. 2d 805, 810, 407 N.W.2d 908, 910 (1987). The Wisconsin statute requires that the conviction only be "substantially," not directly, related to the job. Id., at 808 n.1, 407 N.W.2d, at 909 n.1 (citing Wis. Stats. § 111.32(5)(h)2b (1979-80)). The language from the decision quoted by Allied, regarding recidivism, is dicta found at the end of a footnote. County of Milwaukee, 139 Wis. 2d, at 821 n.3, 407 N.W.2d, at 915 n.3. Indeed, in a more recent case, a Wisconsin appellate court affirmed a finding that an applicant who was convicted of assaulting a child with hot grease could not be denied a job at a school because of his conviction. Milwaukee Board of School Directors v. Labor and Industry Review Comm'n, 246 Wis. 2d 988,

632 N.W.2d 123, 2001 WESTLAW 641791 (Wis. App. June 21, 2001). The court concluded that although the applicant "would be handling numerous potentially dangerous substances such as floor cleaners, insecticides, and various chemicals," and the applicant would have contact with children, "there was nothing . . . that would indicate an opportunity for criminal behavior such that the risk of recidivism . . . was too great to require the [employer] to bear." 2001 WESTLAW, at *7.

The other cases cited by SIRVA and Allied were not brought pursuant to anti-discrimination statutes. In one, a parcel-delivery service discharged a deliverer for stealing parcels. The court held the employee did not have a common-law cause of action under the public policy exception to Pennsylvania's at-will employment rule. Cisco v. United Parcel Service, Inc., 328 Pa. Super. 300, 476 A.2d 1340 (1984). Another court reached the same conclusion regarding a hospital security guard who was unknowingly hired with pending criminal charges. Mallette v. U.S. Security Associates, Inc., 2008 WESTLAW 4889025 (E.D. Pa. Nov. 12, 2008). And in a case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Court merely held that "the plaintiff has failed to carry its burden of persuasion that the defendant intentionally discriminated against the plaintiff on the basis of race." Moses v. Browning-Feris Industries of Kansas City, Inc., 1986 U.S. Dist. LEXIS 20073 (D. Kan. Sept. 22, 1986).

The three New York cases cited in Allied's memorandum support plaintiffs' contentions. In each of these cases, "all the factors enumerated in Correction Law § 753 were not properly addressed and considered." Black v. New York State Office of Mental Retardation and Development Disabilities, 20 Misc. 3d 581, 587, 858 N.Y.S.2d 859, 864 (Sup. Ct., Monroe Cty.

15

2008); Formica Construction, Inc. v. Mintz, 65 A.D.2d 686, 688, 885 N.Y.S.2d 298, 300 (2d Dep't 2009); Gallo v. State of New York, Office of Mental Retardation and Developmental Disabilities, 37 A.D.3d 984, 986, 830 N.Y.S.2d 796, 798 (3d Dep't 2007). The courts granted the petitions in all three, remanding the matters back to the government agencies which initially issued the determinations. Of course, this case is not a special proceeding brought pursuant to Article 78 of the New York Civil Practice Law and Rules, seeking annulment of a factfinding determination by an administrative agency. Defendants here are private firms. The case should not be remanded, but submitted to a jury that can decide whether dismissal of Griffin and Godwin is consistent with the intent of the Legislature in generally prohibiting discrimination on the basis of criminal record.

## CONCLUSION

For all of the above reasons, plantiffs respectfully request that the motion of defendants SIRVA and Allied for summary judgment be denied, and that plaintiffs' motion for summary judgment on liability on their Sixth Cause of Action be granted.

Dated: New York, New York
       September _____, 2012

                              LICHTEN & BRIGHT, P.C.
                              Attorneys for Plaintiffs

                              By: _____
                                  Stuart Lichten
                              475 Park Avenue South - 17th Floor
                              New York, New York 10001
                              (646) 588-4872