UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TRATHONY GRIFFIN, MICHAEL GODWIN,
and FRANK CALLACE,

                        Plaintiffs,

-against-

SIRVA, INC.; ALLIED VAN LINES, INC.; and
ASTRO MOVING AND STORAGE CO., INC.,

                        Defendants.

Case No. CV 11-1844 (MKB)(WDW)

# DEFENDANT ASTRO MOVING AND STORAGE CO., INC'S MEMORANDUM OF LAW IN SUPPORT OF CO-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALBANESE & ALBANESE LLP
Attorneys for Defendant
Astro Moving and Storage Co., Inc.
1050 Franklin Avenue
Garden City, New York 11530
516-248-7000

## PRELIMINARY STATEMENT

Defendant Astro Moving and Storage Co., Inc. ("Astro") is engaged in the business of moving and storage for both residential and commercial clients. As described in the Memorandum of Law of defendants SIRVA, Inc. ("SIRVA") and Allied Van Lines, Inc. ("Allied"), Astro acts as a disclosed household goods agent of Allied with respect to Allied's interstate transportation and related services pursuant to the Agency Contract (the "Agency Contract") annexed as Exhibit "D" to the co-defendants' motion for summary judgment (the "SIRVA/Allied Motion").

Section 3.04 of the Agency Contract provides that Allied will promulgate rules and regulations from time to time and that Astro will comply with those rules and regulations. Pursuant to the Allied's Rules and Regulations, annexed as Exhibit "F" to the SIRVA/Allied Motion, Astro employees who are utilized for work at the home or business of a customer performed by Astro as an agent for Allied, "must have successfully passed a criminal background screen or have satisfied other conditions as specifically approved by Allied." Ex. F, Rule 4.1. The policy set forth in Article 4.0 of the Rules and Regulations is referred to as the Allied Certified Labor Program. In order for Astro to remain as an agent of Allied, Astro was required, pursuant to the Agency Contract, to comply with Allied's Rules and Regulations, including the Certified Labor Program.

Astro is a moving and storage company. It moves the contents of a customer's home or business from one location to another. This requires the employees of Astro to enter the customer's premises, going from room to room, moving furniture and other items and, depending on the job, also preparing and packing up the items and furniture to be moved from the old location to the new location.

When Astro's employees enter a client's home, they have no idea who is in the home and where the members of the customer's family may be located. Astro, as an agent of Allied for decades, represents itself to be professional and safe in the performance of its duties to the customer. The customer does not expect that an employee of Astro may be a registered sex offender that they would never voluntarily allow to enter their home. The customer trusts Astro to employ persons of whom the customer should have no fear. Thus, Astro's own interests in maintaining its reputation and avoiding potential liability coincide with Allied's Certified Labor Program. Both Astro and Allied are seeking to ensure that customers are being provided with services by persons who have met certain minimum standards.

Plaintiffs Trathony Griffin ("Griffin") and Michael Godwin ("Godwin") a/k/a Michael Toney are both convicted sex offenders. According to the Sex Offender Registry maintained by the New York State Division of Criminal Justice Services (the "Registry"), Griffin was convicted of Course of Conduct Against a Child in the First Degree (Penal Law § 130.75). Griffin's victim is described as a 7-year old male child. As defined in the Penal Law, this crime involves either a person who engages in:

> (a) ...two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual conduct or aggravated sexual contact with a child less than eleven years old; or

> (b) [if a person over 18 years old] ... two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual conduct or aggravated sexual contact with a child less than thirteen years old.

Godwin was convicted of Rape-First Degree (Penal Law § 130.35) and Sexual Abuse-Fist Degree (Penal Law § 130.65). First degree rape applies when a person engages in sexual intercourse with another person: (1) by forcible compulsion; (2) who is physically

helpless and cannot consent; (3) who is less than eleven years old; (4) or if the person is over eighteen and the victim is less than thirteen years old. The Registry describes Godwin's victim as a 7-year old female. First degree sexual abuse is similar except that it involves more generally any sexual contact under the same categories as 1 – 3 under the rape statute.

The two moving plaintiffs were convicted of very serious crimes and Astro was justified in taking the actions that it did with respect to each of them. Each of the two plaintiffs is maintained on the State's Sex Offender Registry. His current address and his photo, which is periodically updated, are a public record and provide notice to the public of his identity and whereabouts.

## ARGUMENT

**Material Issues of Fact Preclude**
**Summary Judgment for Plaintiffs**

Assuming that this Court has jurisdiction over the Sixth Cause of Action, Plaintiffs are not entitled to partial summary judgment on their Sixth Cause of Action because there are material issues of fact in dispute. For the reasons set forth below, it is submitted that this Court does not have jurisdiction over the Sixth Cause of Action in any event, or, if there is supplemental jurisdiction, the Court should, in its discretion, decline to exercise that jurisdiction.

Plaintiffs allege that they were terminated in violation of Executive Law § 296(15) and Corrections Law § 752 *per se* because of their failure to meet the requirements to be certified as meeting Allied's standards under its Certified Labor Program. In other words, Plaintiffs argue that since the Certified Labor Program does not take specifically take into account the enumerated factors set forth in Corrections Law § 753 it is *per se* in violation of the Executive Law and Corrections Law. Plaintiffs' Memorandum of Law at 3 *et seq*.

Plaintiffs claim that there was no direct relationship between their criminal convictions and their employment and their continued employment did not involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public. This is inherently a fact laden issue that cannot be determined on a motion for summary judgment.

The Corrections Law lists eight specific factors to be considered by an employer in determining whether it is appropriate to make an adverse employment decision based on a person's prior criminal record:

> (a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
> (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
>
> © The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
>
> (d) The time which has elapsed since the occurrence of the criminal offense or offenses.
>
> (e) The age of the person at the time of occurrence of the criminal offense or offenses.
>
> (f) The seriousness of the offense or offenses.
>
> (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
>
> (h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

Correction Law § 753(1). These factors, when applied to Plaintiffs Godwin and Griffin, at a minimum show that there are material issues of fact that must be considered by the Court at trial.

Apparently, it is Plaintiffs' contention because of Allied's Certified Labor Program, which established certain national requirements persons working on shipments through Allied agents such as Astro, then Executive Law § 296(15) has been automatically violated. However, they fail to cite any case where compliance with certain policies that do not mirror the statutory scheme must be found to be *per se* a violation of the statute. Plaintiffs first fail to acknowledge that there is a carefully conceived rationale behind Allied's policy that takes into account most, if not all, of the statutory factors. Moreover, they fail to acknowledge that Astro may have weighed the statutory factors and concluded, in agreement, that there would be unreasonable risks to customers due to the direct relationship between their duties and their prior sexual offenses. In other words, Plaintiffs assume that Astro did not evaluate the situation independently once it became aware of the serious, heinous nature of the crimes these persons committed. Certainly, Keith Verderber, in his deposition testimony stated that he considered the factors, albeit not in eloquent legalistic terminology. Exhibit "A" to the Declaration of Stuart Lichten, dated August 31, 2012 in support of Plaintiffs' motion at 62 – 68.

Plaintiffs fail to acknowledge that there may have been a combination of factors including Allied's Certified Labor Program and the specific facts of these two Plaintiffs' backgrounds, which is explained in Mr. Verderber's deposition testimony. Allied's Certified Labor Program may speak in absolute terms. Nonetheless, Plaintiffs are two very serious sexual offenders who, as adults, sexually raped and otherwise abused children. Thus, in addition to the proscription of the Certified Labor Program, these are two men who certainly were not, as a matter of law, entitled to employment by Astro simply because they also failed to meet Allied's Certified Labor Program standards.

It is clear that Astro did not have to state with specificity a detailed analysis of the eight factors set forth in the Corrections Law. *See Acosta v. New York City Dep't of Educ.*, 16 N.Y.3d 309, 318-19 (2011). The Court in *Acosta* was reviewing the decision in an Article 78 proceeding and reviewed the background of the petitioner in order to conclude that the Department of Education's rejection of petitioner's employment application failed to comply with the statute. In other words, if the background of the petitioner independently would have supported the decision to deny petitioner's application it appears that the Court would not have found it to be arbitrary and capricious and would have sustained it. *Id.* at 319.

In *Acosta*, the petitioner was only 17 when she was convicted of first degree robbery. A decade after petitioner had completed her sentence, she took a part-time job at the Cooke Center. During that intervening decade she took steps to rehabilitate herself. She earned a college degree, started a family, did significant volunteer work and worked at two law firms. These were positive factors noted by the Court. Plaintiffs here want this Court to award them summary judgment without any independent consideration of the factors that are present to show why it was appropriate to exclude them from work that would permit them to enter customers' premises as part of their work duties.

Essentially, it is a factual inquiry that must be conducted to determine whether the factors to be considered as to whether a person fits within either or both of the exceptions set forth in Corrections Law § 752 where there is (1) a "direct relationship" between the criminal offense and the specific employment or (2) the continuation of employment would "involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." Thus, summary judgment in favor of Plaintiffs is inappropriate in these circumstances.

*Acosta*, recognizes that an employer who is not a legal expert is not required to memorialize its decision making process exactly in the terms found in a statute, although it would be helpful if an employer did that. Moreover, *Acosta* involved the New York City Department of Education, which has thousands of employees and, presumably, professionals in human relations. Astro is a relatively small family company without a separate human relations department. It should be sufficient if the factors exist to render the employer's decision consistent with the statutory exceptions where there is, after a factual inquiry, a direct relationship between the offense and the employee's duties and/or a there is a danger to specific individuals, Astro's customers, and/or the general public.

When considering the factors, it is clear that there are issues of fact as to whether the heinous sexual offenses committed by Godwin and Griffin bear a sufficiently direct relationship to their duties going into the homes of unsuspecting customers and whether they presented a danger to the customers that hired Astro, expecting a professional group of employees that they could trust with their moving jobs.

Plaintiff's duties required them regularly to enter customers' residences both to pick up customer's property to be moved and to deliver that property at the new home. This required these two convicted sexual offenders to wander through a customers' house during the moving process. Typically, the customers would be home, or at least some members of the family would be home. Plaintiffs are men who are specifically required to avoid certain temptations that could trigger their criminal activities again. Yet, Plaintiffs ignore the close proximity they have with family members during a move. Certainly, Astro and Allied had a right to be concerned if either Plaintiff, or both Plaintiffs if they were both on a job together, might be in a quiet corner of the house with a child or adult that would trigger their criminal

behavior to return. One can easily picture the lawsuit against the employer for permitting that to happen. Certainly, the Employer cannot be expected to make sure that neither Plaintiff could ever be in such a situation and revert to criminal behavior. Thus, factors (b) and (c) certainly recognize the dangers inherent in having plaintiffs go into the homes of customers who are unaware of their criminal histories and would trust that their family members were safe.

Another statutory factor weighing against Plaintiffs is the lapse of time. Corrections Law § 753(1)(d). Here the lapse of time following their release from prison was a few years at most and it is generally understood that sexual predators cannot really be cured and continue to pose a risk to the community. Both Plaintiffs remain on the public registry and must periodically report and update their status.

The seriousness of the offenses needs little explanation. Each of these men sexually abused a 7 year old child. Godwin abused a little girl. Griffin abused a little boy. Other than, perhaps, a pre-meditated murder, what could be worse? And many would say that what these men did was worse than murder. Corrections Law § 753(1)(f).

Notably, unlike the facts in *Acosta*, neither Plaintiff produced any evidence of his rehabilitation in an effort to persuade Astro and/or Allied to make an exception for them. Corrections Law § 753(1)(g).

Section 753(1)(h) sums up the important consideration here that permitting these convicted sexual offenders to freely move in and around the homes of unsuspecting customers endangered the safety and welfare of the customers engaging Astro to move their belongings to a new home.

Thus, there are material issues of fact in dispute and summary judgment should be denied.

## Plaintiffs' Sixth Cause of Action Is Pre-empted

Defendants SIRVA and Allied have shown why the Sixth Cause of Action is pre-empted by federal law. There is no need to repeat the substantial documentation submitted in support of the pre-emption of Article 23-A of the Corrections Law. However, it may be helpful to highlight a few points.

The moving jobs that Astro undertakes as an agent of Allied are interstate moving jobs. Thus, when loading or unloading a truck or packing or unpacking household goods, a portion of those services will regularly be performed in states outside New York. Plaintiffs seek to impose a standard upon Astro that may be very different from standards in other states where Astro operates. For example, another state might require that sexual offenders disclose their criminal records and obtain written consent before being permitted to enter a person's premises. Another state might require special supervision of an individual with a record as a sexual offender. The point is that each state cannot be permitted to dictate such terms that may impact on commerce between the states.

If the Court were to determine that Plaintiffs' Sixth Cause of Action is not pre-empted as a matter of law, there would still remain issues of fact regarding the impact of compliance with Corrections Law 23-A on Allied and Astro's prices and services that would require trial.

## The Court Does Not Have Jurisdiction Over Plaintiff's Sixth Cause of Action

If Plaintiffs' claims are not pre-empted for the reasons set forth in the motion by defendants SIRVA and Allied, a threshold issue is whether this Court even has jurisdiction to hear the Sixth Cause of Action. Since Plaintiffs' Sixth Cause of Action is not based on a federal

question and this action is not before the Court based on diversity jurisdiction, the only basis is the Court's supplemental jurisdiction pursuant to 28 USC § 1367, which provides that:

> (a) ...the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The federal claims asserted by Plaintiffs involve alleged violations of the Fair Labor Standards Act related to wage and hour provisions and allege racial discrimination in the nature of assignments given to employees.

The Sixth Cause of Action is based on a very specific statutory provision in New York related to employment actions taken against individuals based on their prior criminal convictions. It is unrelated to any wage and hour rules or racial factors and, therefore, is unrelated to claims based on racial discrimination or violations of the Fair Labor Standards Act. Accordingly, the claims under the Sixth Cause of Action are not within the Court's supplemental jurisdiction.

Additionally, even if the Court were to conclude that the Sixth Cause of Action is within its supplemental jurisdiction, the Court should decline to exercise its jurisdiction because subsection (a), 28 USC § 1367(c) provides that the Court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,...or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

## The Moving Plaintiffs Have Failed to
## Pursue Proper Administrative Procedures

It is submitted that this Sixth Cause of Action does raise a novel issue of State law in addition to the completely separate nature of the claims from the other claims brought by Plaintiffs in this Court. Violations of Section 752 of the Corrections Law are enforced pursuant to Section 755 of the Correction Law which provides that:

> 1.  In relation to actions by public agencies, the provisions of this article shall be enforceable by a proceeding brought pursuant to article seventy-eight of the civil practice law and rules.
>
> 2.  In relation to actions by private employers, the provisions of this article shall be enforceable by the division of human rights pursuant to the powers and procedures set forth in article fifteen of the executive law, and, concurrently, by the New York city commission on human rights.

Thus, the Corrections Law sets forth very specific, limited procedures available for its enforcement depending on whether enforcement is being pursued against a public agency or a private employer. In each case there is a specific forum set forth for the enforcement of the statute. In *Acosta*, for example, the case originated as an Article 78 proceeding against a public agency. Proceedings against private employers must be brought through the Division of Human Rights and appealed through that process before a complainant may bring a proceeding in court.

An employee of a private employer may not initially bring an action through a plenary action in the New York State Supreme Court and must first file a complaint with the Division of Human Rights and pursue its remedies in that forum. Thus, plaintiffs Griffin and Godwin should have pursued the alleged violations of the Corrections Law through the commencement of a proceeding before the Division of Human Rights, which they failed to do. Notably, all of the cases cited by Plaintiffs interpreting Article 23-A are cases brought against public agencies, not private employers. Thus, the Court should not exercise supplemental

jurisdiction over the sixth cause of action. It would circumvent a very specific statutory scheme for the enforcement of alleged violations of Article 23-A of the Corrections Law. This is significant because the statutory scheme utilizes the expertise of the Division of Human Rights in adjudicating such claims. Permitting this claim to proceed would set a precedent for others to use the federal courts to avoid the statutory enforcement scheme.

## CONCLUSION

For the reasons set forth above, defendant Astro respectfully requests that Plaintiffs' motion for partial summary judgment on their Sixth Cause of Action be denied and that the motion of defendants SIRVA and Allied be granted.

Dated: Garden City, New York
October 9, 2012

ALBANESE & ALBANESE LLP

By: _____
Hyman Hacker
Attorneys for Defendant
Astro Moving and Storage Co., Inc.
1050 Franklin Avenue
Garden City, New York 11530
516-248-7000