UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

TRATHONY GRIFFIN, MICHAEL GODWIN, and
FRANK CALLACE,                                                    CV-11-1844 (MKB)(WDW)

       Plaintiffs,

  - against -

SIRVA, INC.; ALLIED VAN LINES, INC.; and
ASTRO MOVING AND STORAGE CO., INC.,

       Defendants.

------------------------------------------------------------------X

---

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT

---

LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiffs
475 Park Avenue South - 17th Floo
New York, New York 10001
(646) 588-4872

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

TRATHONY GRIFFIN, MICHAEL GODWIN, and
FRANK CALLACE,                                                          CV-11-1844 (MKB)(WDW)

        Plaintiffs,

  - against -

SIRVA, INC.; ALLIED VAN LINES, INC.; and
ASTRO MOVING AND STORAGE CO., INC.,

        Defendants.

----------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Trathony Griffin ("Griffin") and Michael Godwin ("Godwin") submit this memorandum of law in support of their motion for partial summary judgment. It is undisputed that Griffin and Godwin were discharged because of their criminal records, and that defendants did not conduct an individualized assessment of the two employees before their dismissal. Griffin and Godwin therefore are entitled to summary judgment on the Sixth Cause of Action in the Complaint.

## FACTS

Griffin was employed by defendant Astro Moving and Storage Co., Inc. ("Astro"), a moving company, as a laborer from in or about August 2008, until his discharge on or about February 11, 2011. Declaration of Trathony Griffin ("Griffin Dec.") ¶ 5-6. Godwin was employed by Astro as a laborer from on or about May 22, 2010, until his discharge on or about

February 11, 2011. Declaration of Michael Godwin ("Godwin Dec."), ¶ 5-6. Defendant SIRVA, Inc. ("SIRVA"), is the holding company of defendant Allied Van Lines, Inc. ("Allied"), also a moving company. Answer to Complaint ¶ 8.

In June 2010, Allied and Astro entered into a written agreement, effective May 1, 2010, to December 8, 2015 ("Agency Contract"), pursuant to which Allied appointed Astro a limited agent of Allied. Declaration of Stuart Lichten ("Lichten Dec."), Ex. B. Pursuant to Rule 5 of the Agency Contract, any Astro employees who "conduct the business of Allied at customer's home or place of business must have successfully passed a criminal background screen or have satisfied other conditions as specifically approved by Allied." Id., at AVL-45. If Astro uses "unscreened labor" on an Allied shipment, Astro would be subject to a $1,000 fine on the first occurrence and a $5,000 fine on each subsequent occurrence. Id., at AVL-68.

Under Allied's rules, any individual who has been convicted of any sexual offense, whether felony or misdemeanor, no matter how many years ago, automatically fails the screen and is prohibited from working for Astro. Id., Ex. C, at 2-3. SIRVA has entered into a written agreement with HireRight Solutions, Inc. ("HireRight"), pursuant to which HireRight conducts background investigations of individuals at the request of SIRVA. Id., Ex. D.

On February 8, 2011, Astro, at Allied's behest, required Griffin and Godwin to sign Background Investigation Consent forms, authorizing SIRVA "and/or its agents" to investigate their criminal records. Id., at Ex. E. On October 30, 1997, Griffin was convicted of sexual abuse in the first degree for an offense which occurred on or about April 21, 1997. Griffin Dec., at ¶ 3. On September 13, 1999, Godwin was convicted of rape in the first degree for an offense which occurred on or about October 26, 1998. Godwin Dec., at ¶ 3. In e-mails dated February 10,

2011, HireRight informed Astro that Griffin and Godwin did not meet SIRVA's "standards." Lichten Dec., Ex. F.

In letters dated February 10, 2011, Astro informed Griffin and Godwin that SIRVA and Allied had obtained "reports regarding potential laborers," and enclosed copies of the reports "obtained in conjunction with your consideration for qualification." Id., Ex. G. On or about February 11, 2011, Astro discharged Griffin and Godwin. Id., Ex. H.

## ARGUMENT

I. DEFENDANTS' PER SE CONVICTION RULE VIOLATES NEW YORK LAW.

Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Judgment as a matter of law is appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . .." Matsushita Elec. Indus. Co. v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). The undisputed facts here show that defendants did not comply with New York laws prohibiting discrimination on the basis of criminal record.

Pursuant to New York law, "It shall be an unlawful discriminatory practice for any . . . corporation . . . to deny any . . . employment to any individual by reason of his . . . having been convicted of one or more criminal offenses," unless "there is a direct relationship between one or more of the previous criminal offenses and the specific . . . employment . . . held by the individual," or the "continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Executive Law § 296(15), Correction Law § 752. "Direct relationship" is defined as where "the nature of

3

criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the . . . job in question." Correction Law § 750(3).

These statutes were "enacted to further certain goals that the Legislature has identified as among the 'general purposes' of the Penal Law, namely, 'the rehabilitation of those convicted' and 'the promotion of their successful and productive reentry and reintegration into society.'" Acosta v. New York City Dep't of Educ., 16 N.Y.3d 309, 314, 921 N.Y.S.2d 633, 634, 946 N.E.2d 731, 732 (2011)(quoting Penal Law § 1.05(6)).

> Studies established that the bias against employing . . . ex-offenders was not only widespread but particularly unfair and counterproductive. Although ex-offenders were urged when released from prison to find employment as a part of their rehabilitation, they had great difficulty in doing so because of their criminal records and this difficulty existed even though there was an absence of any connection between the employment . . . and the crime committed, its circumstances or the background of the offender. Failure to find employment not only resulted in personal frustration but also injured society as a whole by contributing to a high rate of recidivism.

Bonacorsa v. Van Lindt, 71 N.Y.2d 605, 611, 528 N.Y.S.2d 519, 521-22, 523 N.E.2d 806, 808-09 (1988)(citing Meltsner, Caplan & Lane, An Act to Promote the Rehabilitation of Criminal Offenders in the State of New York, 24 Syracuse L. Rev. 885, 905; 1976 N.Y. Legis. Ann., at 50).

In cases where an employer contends that a "direct relationship" exists between the criminal offense and the job, or that continued employment of a person poses an "unreasonable risk," the employer must consider eight statutory factors:

> (a) The public policy of this state, as expressed in this act, to encourage the . . . employment of persons previously convicted of one or more criminal offenses.

4

   (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

   (c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

   (d) The time which has elapsed since the occurrence of the criminal offense or offenses.

   (e) The age of the person at the time of occurrence of the criminal offense or offenses.

   (f) The seriousness of the offense or offenses.

   (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

   (h) The legitimate interest of the . . . employer in protecting property, and the safety and welfare of specific individuals or the general public.

Correction Law § 753(1). "A failure to take into consideration each of these factors results in a failure to comply with the Correction Law's mandatory directive." Acosta, 16 N.Y.2d, at 316, 921 N.Y.S.2d, at 635, 946 N.E.2d, at 733 (citation omitted). Defendants did not consider these factors.

Defendants here, implementing Allied's per se rules, did not take any of the statutory factors into consideration when denying employment to Griffin and Godwin. Their discharge constituted nothing "more than a pro forma denial" of employment "on the basis of [their] prior criminal conviction. Such a denial, without consideration of each of the Correction Law § 753 factors, is precisely what the statute prohibits." Acosta, 16 N.Y.3d, at 320, 921 N.Y.S.2d, at 638, 946 N.E.2d, at 736. The Adjudication Guidelines of SIRVA and Allied, Lichten Dec., Ex. C, are unlawful in New York State. Astro's application of those guidelines to Griffin and Godwin, as

mandated by SIRVA and Allied, therefore was unlawful as well. Defendants' violation of this aspect of the Correction Law alone merits summary judgment on liability on plaintiffs' Sixth Cause of Action.

II. DEFENDANTS UNLAWFULLY DENIED GRIFFIN AND GODWIN EMPLOYMENT BECAUSE OF THEIR CRIMINAL RECORDS.

Astro does not dispute that it discharged Godwin, and at least removed 80 percent of Griffin's pay and job duties, at the direction of SIRVA and Allied, because of the two employees' criminal records. As a matter of law, defendants have denied employment to Griffin and Godwin in violation of the Human Rights Law and Correction Law.

"As a general matter, it is unlawful in this state for any public or private employer to deny any . . . employment application 'by reason of the individual's having been previously convicted of one or more criminal offenses.'" Acosta, 16 N.Y.3d, at 314, 921 N.Y.S.2d, at 634, 946 N.E.2d, at 732. "As Governor Hugh L. Carey's memorandum approving the legislation that codified this general prohibition noted, 'the key to reducing crime is a reduction in recidivism,' and '[t]he great expense and time involved in successfully prosecuting and incarcerating the criminal offender is largely wasted if upon the individual's return to society his willingness to assume a law-abiding and productive role is frustrated by a senseless discrimination.'" Id., at 314-15, 921 N.Y.S.2d, at 634, 946 N.E.2d, at 732.

Numerous courts and administrative agencies have, under similar circumstances, found it unlawful to deny positions to applicants or employees with convictions. One case involved an applicant with two 1998 convictions for first-degree sexual abuse and attempted robbery and two

1997 convictions for weapon possession and theft, who was discharged from the position of Watershed Maintainer in 2001. City of New York v. New York City Civil Service Comm'n, 30 A.D.3d 227, 817 N.Y.S.2d 254 (1st Dep't 2006). A Watershed Maintainer repairs and maintains facilities and property in reservoirs and watersheds. Id. The New York City Civil Service Commission concluded that the convictions were not job-related, and that there was no "'direct connection'" between the "'job duties and his background that adequately present him as a threat to public safety.'" The Commission noted that the employee had not committed any crimes since his release from prison the previous year, that he had presented evidence "'attesting to his work ability and that he is a responsible and hard working employee,'" and that he had no disciplinary record in the seven months he had worked at the job. Id., at 228, 817 N.Y.S.2d, at 255. An appellate court confirmed the ruling. Id., at 229, 817 N.Y.S.2d, at 255-56.

In another case, an employee had been convicted nine times between 1962 and 1971 for prostitution and drug possession, including a felony conviction. City of New York v. New York City Civil Service Comm'n, 141 Misc. 2d 276, 284-86, 532 N.Y.S.2d 626, 632-33 (Sup. Ct., N.Y. Cty. 1988). In 1982, she was convicted of first-degree manslaughter. Id., at 277, 532 N.Y.S.2d, at 628. In 1984, she was appointed to the position of Eligibility Specialist by the New York City Human Resources Administration. In 1985, she was disqualified for "lack of good character," without addressing any of the enumerated factors. Id., at 278, 532 N.Y.S.2d, at 628. Supreme Court concluded that had the employer "properly evaluated each of the factors set forth in § 753, it could not have reasonably concluded that [the employee] should be disqualified." Id., at 285, 532 N.Y.S.2d, at 633.

The New York City Civil Service Commission in that case held that the convictions from 14 or more years before her application "no longer affected her fitness for employment," and that the two-year-old manslaughter conviction "was insufficient to support a finding of disqualification." Id., at 285, 532 N.Y.S.2d, at 633. Supreme Court held that "there was substantial evidence before the CSC to support its determination that [the employee's] criminal convictions did not have a direct bearing on her ability to perform the duties of an Eligibility Specialist and that her employment in that position would not create an unreasonable risk of harm to the [employer] or the people that it serves." Id., at 286, 532 N.Y.S.2d, at 633.

A Federal court found that a plaintiff who had been convicted of manslaughter in 1973 could not lawfully be denied a position as a housing caretaker in 1982. Soto-Lopez v. New York City Civil Service Comm'n, 713 F. Supp 677 (S.D.N.Y. 1989). The Court could not accept the "view that the tasks involved in this position are either 'directly related' to a manslaughter conviction or present an unreasonable risk to persons or property." Id., at 678 (citing Correction Law § 752), "Since the housing caretaker position, unlike a correction officer position, for example, would not as such involve plaintiff in violent confrontations and obviously does not require plaintiff to carry arms, his fitness to perform these duties is not implicated. . . . Weighing the public policy in favor of employing ex-offenders against the other factors as the statute requires," the Court found that a refusal to hire the plaintiff for the job would have violated State law. Id., at 169.

The Court of Appeals has ruled that the New York City Department of Education acted arbitrarily in denying an applicant with a 13-year-old first-degree robbery conviction an administrative assistant position at an organization that provided special education to disabled

8

preschoolers. Acosta, 16 N.Y.2d, at 318-20, 921 N.Y.S.2d, at 637-38, 946 N.E.2d, at 735-36. Noting that "barring discrimination against those who have paid their debt to society and facilitating their efforts to obtain gainful employment benefits the community as a whole," the Court annulled the agency's finding that in "'light of these convictions, granting employment will pose an unreasonable risk to the safety and welfare of the school community," and granted the petition. Id., at 318, 321, 921 N.Y.S.2d, at 636, 638, 946 N.E.2d, at 735-36. See also, El v. New York City Dep't of Ed., 2009 WESTLAW 1271992 (Sup. Ct., N.Y. Cty. Apr. 1, 2009)(unlawful to deny application for substitute teacher job of petitioner convicted of burglary and larceny); Black v. New York State Office of Mental Retardation and Developmental Disabilities, 20 Misc.3d 581, 858 N.Y.S.2d 859 (Sup. Ct., Monroe Cty. 2008)(unlawful for agency providing services to developmentally disabled to discharge in 2007 support specialist with six felony convictions and 20 misdemeanor convictions up to 2004); Gallo v. State of New York Office of Mental Retardation and Developmental Disabilities, 37 A.D.2d 984, 830 N.Y.S.2d 796 (3d Dep't 2007)(unlawful to deny application for bus driver to petitioner with felony assault conviction); Meth v. Manhattan and Bronx Surface Transit Operating Auth., 134 A.D.2d 431, 521 N.Y.S.2d 54 (2d Dep't 1987)(unlawful to disqualify applicant for bus driver position based on two-year-old felony bribery conviction).

Conversely, courts have allowed criminal convictions to form the basis of a denial of employment only where a specific, direct connection is evident between the offense and the duties of the position. For example, the Court of Appeals found that the New York State Racing and Wagering Board could deny a racing license to a harness racehorse owner because of convictions for making a false declaration to and obstructing justice before a Federal Grand Jury

9

investigating horse race fixing. Bonacorsa v. Van Lindt, 71 N.Y.2d 605, 528 N.Y.S.2d 519, 523 N.Y.S.2d 806 (1988). The Court also has affirmed the denial of a permit to operate a municipal waste disposal facility to a firm which, while the application was pending, was convicted of tax-related crimes involving "a willingness to mislead the government." Al Turi Landfill, Inc. v. New York State Dep't of Environmental Conservation, 98 N.Y.2d 758, 751 N.Y.S.2d 827, 781 N.E.2d 892 (2002). Another appellate court has held that discharging a teacher of business ethics "after he was convicted of stealing money from a client" did not violate the anti-discrimination statute. Rosa v. City Univ. of New York, 13 A.D.3d 162, 789 N.Y.S.2d 4 (1st Dep't 2004).

The usual employment discrimination case presents a conflict as to the employer's intent. The plaintiff claims his discharge resulted from some form of prohibited bias, while the employer proffers a legitimate business justification for its actions. See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973). Here, that dispute does not exist. Defendants' intent is not in issue. All that remains are questions of law.

As a matter of law, there is no direct relationship between the position held by Griffin and Godwin and their prior convictions. Astro hired Griffin and Godwin essentially to lift and carry heavy objects. Convictions for sex offenses do not have a direct bearing on fitness or ability to perform manual labor. This situation is not analogous to a business-ethics professor stealing from a client, or businessmen trying to get back into horse racing or waste disposal, the precise scenes of their corruption convictions. The undisputed facts establish that there is no direct connection here between the convictions and the job.

Moreover, no reasonable juror could conclude that if defendants had applied the eight statutory considerations to Griffin and Godwin, as defendants were required to do, that

defendants could find either a direct connection between the sex offenses of which Griffin and Godwin were convicted and the duties of their positions with Astro, or an unreasonable risk to anyone's property or safety. The offenses occurred 14 and 13 years, respectively, before the discharges of Griffin and Godwin. Griffin Dec., at ¶ 3; Godwin Dec., at ¶ 3. At the time of his offense, Godwin was in his 20's. He is now 43. Godwin Dec., at ¶ 2. Over the past decade-and-a-half, Griffin and Godwin have no criminal records, their paroles have ended, and they have worked, raised families, and otherwise demonstrated their rehabilitation. Griffin Dec., at ¶¶ 7-10; Godwin Dec., at ¶¶ 6-8. Although the two were convicted of extremely serious offenses, they have served their time, been rehabilitated, and are now law-abiding, contributing members of their communities.

There is no reason Griffin and Godwin should not be allowed to work as laborers. Indeed, Griffin worked for Astro for three years in an exemplary manner. Barring these two men from their positions merely because their moving job entails coming into contact with members of the public would effectively render them unemployable. It is difficult to imagine what type of work they would be permitted to obtain. Allowing the discharges of Griffin and Godwin to stand would completely negate the intent of the New York statutes.

## CONCLUSION

For all of the above reasons, plantiffs Trathony Griffin and Michael Godwin respectfully request that the Court grant them summary judgment on liability on the Sixth Cause of Action in the Complaint.

Dated: New York, New York
September 5, 2012

LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiffs

By: _____
Stuart Lichten
475 Park Avenue South - 17th Floor
New York, New York 10001
(646) 588-4872
