UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------

TRATHONY GRIFFIN, MICHAEL GODWIN
and FRANK CALLACE,

       Plaintiffs,

    v.

SIRVA, INC., ALLIED VAN LINES, INC. and
ASTRO MOVING AND STORAGE COMPANY,

       Defendants.

--------------------------------------------------------------

**MEMORANDUM & ORDER**

11-CV-1844 (MKB)

MARGO K. BRODIE, United States District Judge:

  Plaintiffs Trathony Griffin, Michael Godwin and Frank Callace bring the above-
captioned action against Defendants Sirva, Inc. ("Sirva"), Allied Van Lines, Inc. ("Allied"), and
Astro Moving and Storage Company ("Astro"), alleging violations of 42 U.S.C. § 1981, the New
York State Human Rights Law, N.Y. Exec. Law § 296(15) ("NYSHRL"), the Fair Labor
Standards Act, and the New York Labor Law. Plaintiffs Griffin and Godwin ("Plaintiffs")
moved for partial summary judgment against all Defendants on the issue of liability for their
NYSHRL claim of discrimination based on their criminal history. Defendants Allied and Sirva
moved for summary judgment on Plaintiffs' NYSHRL claim for discrimination based on
criminal history, which is the only claim asserted against them. For the reasons discussed below,
the Court denies Plaintiffs' partial summary judgment motion and grants Allied's and Sirva's
summary judgment motion dismissing Plaintiffs' NYSHRL claim as to them.

## I. Background

### a. Corporate relationships between Defendants and others

Sirva is a holding company of Sirva Worldwide, Inc. ("Sirva Worldwide"), Sirva Worldwide is the parent company of North American Van Lines, Inc. ("Van Lines"), and Van Lines is the parent company of Allied. (Defs. 56.1 ¶ 16.) Allied is a motor carrier company authorized by the Department of Transportation to "transport household goods and high-value commodities in interstate commerce." (*Id.* ¶ 18.) Allied provides interstate moving services to the general public through its "disclosed household goods agents throughout the United States." (*Id.* ¶ 19; Pls. Counter 56.1 ¶ 19.)

According to Defendants, Sirva "merely owns the outstanding stock of its subsidiary companies and does not produce products or provide services itself." (Defs. 56.1 ¶ 17.) Sirva had no employment contract with Griffin or Godwin. (*Id.* ¶ 44; Pls. Counter 56.1 ¶ 44.) Plaintiffs claim that Sirva provides some services and "took numerous actions in this case." (Pls. Counter 56.1 ¶¶ 17, 62.) Plaintiffs rely on three emails to support their claim of Sirva's involvement in this case, which emails they allege indicate that Sirva played a role in, or had some responsibility for, establishing the background screening requirements that ultimately led to the loss of their employment.[1]

---

[1] Plaintiffs' Exhibit E contains Plaintiffs' background investigation consent forms, which authorize Sirva and/or its agents to investigate the Plaintiffs' background, criminal or police records, and public records. (Pl. Ex. E.) However, it was Sirva Worldwide, a non-party to this proceeding, that entered into the relevant agreement with HireRight Solutions, a background screening company, to provide the relevant background screening services. (Pl. Ex. D.) Plaintiffs' Exhibit F is an email from HireRight to Astro regarding Griffin's failed background screening and which states that Griffin did not meet the standards set forth by Sirva Worldwide. (Pl. Ex. F.) Plaintiffs' Exhibit G is a copy of a letter from Astro to Godwin, which states that Sirva and its affiliated carriers, Allied and Van Lines, required "consumer reports" regarding potential laborers, and that Astro was enclosing a copy of the "consumer report" it obtained in conjunction with Godwin's consideration for qualification. (Pl. Ex. G.)

Astro "provides local warehouse services and transportation services under its own authority from the New York State Department of Transportation." (Defs. 56.1 ¶ 20; Pls. Counter 56.1 ¶ 20.) Pursuant to an agency contract ("Agency Contract") between Allied and Astro, Astro acts as one of Allied's "disclosed household goods agents" in New York with respect to Allied's interstate transportation and related services. (Defs. 56.1 ¶ 32; Pls. Counter 56.1 ¶ 32.) "Household goods agents" are defined at 49 C.F.R. § 375.14 to include "agents who are permitted or required under the terms of any agreement or arrangement with a principal carrier to provide any transportation service for or on behalf of the principal carrier, including the selling of or arranging for any transportation service . . . ." 49 C.F.R. § 375.14.

Under the Agency Contract, Allied is the carrier and Astro is its agent. An "agent" may "solicit, to estimate the weight, size and charges of, to collect charges for, to book, register, pack, crate, prepare for transportation, receive, load, transfer, unload, store, warehouse, deliver, and otherwise to service, in accordance with the terms applicable thereto, shipments of household goods and all other freight which CARRIER has authority to transport, and from time to time, as ditected or authorized by CARRIER to provide equipment; to bill for services and transport such shipments." (Pls. Ex. B.) An agent may book and carry, or cause to be carried, shipments "so booked and registered" by the agent pursuant to the Carrier's reasonable rates and regulations.[2] (*Id.*) The Rules and Regulations provide that "all individuals who conduct the business of Allied at a customer's home or place of business" must have successfully passed a criminal background screen or have satisfied other conditions as specifically approved by Allied. This policy includes

---

[2] Plaintiffs' Exhibit B includes a portion of the Allied Rules and Regulations, but due to the selective inclusion of pages in this exhibit, it is unclear whether these Rules and Regulations are explicitly incorporated into the contract. However, since the agent must act pursuant to the carrier's rules and regulations, these rules and regulations would appear to be incorporated into the contract.

but is not limited to laborers, packers, third party providers . . . ."  (*Id.*)  An agency that violates this policy will be fined, and after three offenses, the agency principal must meet with Allied's executive management.  (*Id.*)

According to Defendants, Allied and Astro are entirely separate entities and do not share employees or common ownership or management.[3]  (Defs. 56.1 ¶ 31.)  Allied does not control Astro's local moving business, which is conducted under Astro's own intrastate New York operating authority, nor does Allied control Astro's employment policies or practices related to its own business.  (Defs. 56.1 ¶ 33.)  The Agency Contract provides that Allied and Astro have a principal-agent relationship, Astro's employees are not employees of Allied, and Allied and Astro do not have a joint employer relationship with respect to the employees of either party.  (*Id.* ¶¶ 34–35.)  Allied has no authority to select or hire Astro's employees and has never possessed such authority.  (*Id.* ¶ 36.)  Allied does not establish the salaries or benefits of Astro's employees, make any payments to Astro's employees, have the authority to discipline or dismiss Astro's employees, control the conduct of Astro's employees, or control the work schedules of, assign jobs to, or supervise the work of Astro's employees.  (*Id.* ¶¶ 36–40.)  Allied does not share office space or its human resources department with Astro and does not maintain personnel records on Astro's employees.  (*Id.* ¶¶ 41–42.)  Astro provides its own equipment when performing services as Allied's disclosed household goods agent.  (*Id.* ¶ 42.)

### b.  Plaintiffs' employment history and prior convictions

Griffin began working for Astro in August 2008, and, through a referral by Griffin, Godwin began working for Astro in May 2010.  (Defs. 56.1 ¶¶ 4, 11–12; Pls. Counter 56.1 ¶¶ 4, 11–12.)  Both worked as "helpers," which required them to pack household goods for

---

[3] Plaintiffs contend that they lack sufficient information to admit or deny any of the facts in this paragraph.  (Pl. 56.1 ¶¶ 31, 33–42.)

transportation and move the goods into and out of Astro's customers' homes. (Defs. 56.1 ¶ 5; Pls. Counter 56.1 ¶ 5; Verderber Dep. 69:21–25, 74.) At the time Griffin was hired, Astro did not conduct background checks.

On October 30, 1997, Griffin pleaded guilty to first degree child abuse and sexual misconduct for a sexual assault against a seven-year-old boy. (Defs. 56.1 ¶ 4; Pls. Counter 56.1 ¶ 4; Griffin Dep. 111:21–24.) He was sentenced to six to twelve years and served ten years. (Griffin Dep. 111:25–112:7.) Griffin is designated as a "Sexually Violent Offender," is currently under the supervision of the New York State Division of Parole, and is not allowed to have contact with children under 18 years of age unless he is in the company of another adult. (Defs. 56.1 ¶ 79; Defs. Ex. M.) Griffin is required to report to the police every ninety days. (Griffin Dep. 141:4–6.)

On September 13, 1999, Godwin pleaded guilty to rape in the first degree and sexual abuse in the first degree involving an assault of a seven-year-old girl.[4] (Defs. 56.1 ¶¶ 8, 75; Pls. Counter 56.1 ¶¶ 8, 75; Godwin Decl. ¶ 3.) Godwin was sentenced to nine years in prison and was released in 2008. (Defs. 56.1 ¶¶ 9, 80; Pls. Counter 56.1 ¶¶ 9, 80.) He remained on parole until May 2010. (Defs. 56.1 ¶ 10; Pls. Counter 56.1 ¶ 10.) Godwin is designated as a "Sexually Violent Offender." His parole expired on August 4, 2011, subject to the condition that he have no contact with children under 18 years of age unless in the company of another adult.[5] (Defs. 56.1 ¶ 81; Defs. Ex. N.)

---

[4] Godwin also pleaded guilty to a misdemeanor count of endangering the welfare of a child. (Defs. 56.1 ¶ 75; Defs. Ex. L.)

[5] The "Offender Details" of both Griffin and Godwin are posted on the New York Division of Criminal Justice ("NYDCJ") website. (Defs. 56.1 ¶ 77; Pls. Counter 56.1 ¶ 77; *see* Defs. Exs. M–N.)

### c. Certified Labor Program

According to Mark Davison, Sirva's Director of Safety & Fleet Registration, Allied "requires its disclosed household goods agents' representatives to enter customers' homes or places of business and perform packing, moving and loading tasks in close proximity with the customers and their families or employees," and the representatives "often have unsupervised contact with customers' children, other family members and valuable personal property in their homes." (Davison Decl. ¶¶ 7–8.) In Allied's judgment, "allowing disclosed household goods agents to send convicted violent sex offenders into unsuspecting customers' homes and businesses would create unreasonable risks of harm to the public served by Allied and to Allied's business and public reputation."[6] (*Id*. at ¶ 10.) Like other major interstate van lines, Allied maintains labor qualification guidelines that must be met by the persons utilized by its disclosed goods agents, including Astro, to perform Allied's moving services. (*Id*. at ¶11.)

In 2006 Allied established a "Certified Labor Program" "requiring the contractors and employees of [Allied's] disclosed household goods agents, including [Astro], to be screened for significant felony criminal histories that disqualify such contractors or employees from participating in [Allied's] interstate moving jobs." (Defs. 56.1 ¶ 50; Pls. Counter 56.1 ¶ 50; Davison Decl. ¶ 12.) On April 19, 2006, a Safety Release was issued to all Allied and North American Van Lines Agents, by the Mobile Agent Technology Director and the Safety

---

[6] Defendants assert that "[p]ersons hired to provide labor services in connection with [Allied's] interstate moving jobs perform packing, moving and loading tasks inside customers' homes where they are regularly in close, unsupervised contact with customers, their children and other family members and valuable property." (Defs. 56.1 ¶ 96; Davison Decl. ¶¶ 7–8.) Plaintiffs disagree; Griffin states in his reply declaration that neither he nor Godwin "performed . . . tasks where they were regularly in unsupervised contact with children or relatives of customers." (Pls. 56.1 ¶ 96; Godwin Reply Decl. ¶ 4.)

Administration Director for Sirva,[7] announcing the "Certified Labor Initiative" to require criminal background checks on all laborers used on all interstate household relocations in order to "ensure the highest quality service to [the] customer." (Defs. Ex. E.) The Certified Labor Program was in effect during February 2011, as set forth in Allied's Rules and Regulations, effective May 25, 2010. (Defs. 56.1 ¶ 51; Pls. Counter 56.1 ¶ 51; Defs. Ex. F.) According to the Certified Labor Program, all individuals who "conduct the business of Allied at [a] customer's home or place of business . . . must have successfully passed a criminal background screen or have satisfied other conditions as specified by Allied," and agents that fail to comply with the Certified Labor Program face fines and potential liability. (Defs. 56.1 ¶ 51; Pls. Counter 56.1 ¶ 51; Defs. Ex. F.)

Allied maintained adjudication guidelines ("Adjudication Guidelines") that were "used to determine the eligibility of its agents' contractors and employees for participation in [Allied's] interstate moving services," and established "certain objective criteria for determining an applicant's qualification for participation in [Allied's] interstate services based on the level and age of an applicant's criminal convictions." (Defs. 56.1 ¶¶ 53–54; Pls. Counter 56.1 ¶¶ 53–54; Davison Decl. ¶¶ 15–16; *see* Defs. Ex. G.) Under the Adjudication Guidelines, an applicant's "felony conviction for any (A) sexual offense; (B) kidnapping; (C) death related offenses; (D) attempted murder; (E) assault with a deadly weapon; (F) assault with intent to kill or (G) armed robbery, mandates the applicant's permanent disqualification from any jobs performed by a disclosed household goods agent under [Allied's] interstate authority." (Defs. 56.1 ¶ 55; Pls. Counter 56.1 ¶55; Davison Decl. ¶ 17; *see* Defs. Ex. G.)

---

[7] It is unclear whether this was issued by Sirva or Sirva Worldwide.

Under Allied's Certified Labor Program standards, agents, including Astro, are responsible for ensuring that the laborers they supply for Allied jobs successfully pass a criminal background check conducted by a third-party investigative service. (Defs. 56.1¶ 60; Pls. Counter 56.1 ¶ 60; Davison Decl. ¶ 19.) Astro is free to hire anyone, regardless of criminal background, for its own intrastate moving services. (Defs. 56.1 ¶ 59.)

Sirva Worldwide entered into a Supplier Services Agreement with HireRight Solutions, Inc. ("HireRight") effective August 24, 2010. (Defs. 56.1 ¶ 63; Pls. 56.1 Counter ¶ 63.) Under this agreement, HireRight provides background screening services to Allied and its disclosed household goods agents. (Defs. 56.1 ¶ 64; Pls. Counter 56.1 ¶ 64.) Allied's disclosed household goods agents, such as Astro, request and pay for HireRight background checks for all contractors and employees assigned to jobs performed for Allied's interstate transportation services. (Defs. 56.1 ¶ 65; Pls. Counter 56.1 ¶ 65.) When an Allied disclosed household goods agent requests HireRight to screen an individual, HireRight notifies the goods agent by email that the individual is qualified under Allied's Certified Labor Program standards. (Defs. 56.1 ¶ 67; Pls. Counter 56.1 ¶ 67.) After the screening is complete, the agent may access HireRight's Complete Report on the individual. (Defs. 56.1 ¶ 67; Pls. Counter 56.1 ¶ 67.) Allied has access to a database of the processed applicants, but HireRight does not send its complete reports to Sirva, Sirva Worldwide or Allied. (Defs. 56.1 ¶ 68; Pls. Counter 56.1 ¶ 68.) If an individual is not qualified, an agent may, in its discretion, continue employing the disqualified individual in the agent's own moving business under the agent's own operating authority, but the individual may not be used on Allied's interstate business. (Defs. 56.1 ¶ 71.)

### d. Background checks by Astro

Even though the Certified Labor Program was announced in 2006, according to Keith Verderber, Astro's Chief Executive Officer, Allied started asking Astro to conduct background

checks on individuals working on Allied shipments in 2008–2009, and thereafter, Astro "needed to get [its employees] cleared to go on the particular jobs."[8]  (Verderber Dep. 63:8–64:3; 64:17–22.)  Griffin initially avoided giving permission for a background check.  (Verderber Dep. 62:12–20.)  Eventually Verderber "had to pin him down" so a background check could be conducted because otherwise "he would be very limited in working" for Astro.  (Verderber Dep. 62:20–23.)  On February 8, 2011, Griffin completed the background investigation consent form.  (Defs. 56.1 ¶ 6; Pls. Counter 56.1 ¶ 6.)  In response to a question asking whether he had "ever been convicted of any felony criminal offenses," he admitted to having a "child abuse" conviction.[9]  (Defs. 56.1 ¶ 6; Pls. Counter 56.1 ¶ 6; Defs. Ex. I.)  Godwin also completed a background investigation consent form in which he admitted to having a "rape" conviction in November 1998.  (Defs. 56.1 ¶¶ 13, 86; Pls. Counter 56.1 ¶¶ 13, 86.)  Both consent forms were submitted by Astro to HireRight in February 2011 for screening.  (Defs. 56.1 ¶ 82; Pls. Counter 56.1 ¶ 82.)  HireRight's background checks on Griffin and Godwin disclosed that both had convictions for violent sexual offenses against young children, are registered sex offenders and remain under supervision.  (Defs. 56.1 ¶ 72; Pls. 56.1 ¶ 72; *see* Defs. Exs. K, L.)

---

[8]  Verderber stated that, in addition to Allied's request, Astro started conducting background checks because of "all the things that [had] been going on."  (Verderber Dep. 63:10–14.)  He explained that "all these things going on" referred to the fact that "[p]eople go into homes, and go[] back to homes and rob[] the people after they do moves or steal[] jewelry," and Astro "shouldn't be sending into peoples [sic] homes" due to liability concerns.  (Verderber Dep. 63:22–64:3.)

[9]  Although Griffin asserts that he "accurately completed" the background investigation consent form (Pl. 56.1 ¶ 6), in response to the question of whether he had been charged with a felony conviction, and, if so, what charges, (Defs. Ex. I.), Griffin listed his conviction as "child abuse" instead of first degree sexual misconduct with a minor, (*id.*).

### e. End of Plaintiffs' employment

According to Griffin, Astro terminated his employment a day or two after he completed the background investigation consent form. (Defs. 56.1 ¶¶ 7, 85; Pls. Counter 56.1 ¶¶ 7, 85.) According to Verderber, when Astro discovered that Griffin did not pass the background check, Verderber sought more information from Griffin. (Verderber Dep. 65:3–18.) Griffin first told Verderber that "he was 17 and the girl was 15." (*Id.* at 65:20–22.) Astro then conducted internet research and discovered that Griffin "violently raped a seven year-old boy." (*Id.* at 67:22–68:3.) Verderber confronted Griffin, who stated that "it was a disgruntled boyfriend or husband that he was with his girlfriend at the time who had a kid." (*Id.* at 68:5–8.) Verderber advised Griffin that he would be "very limited in his job actions or jobs because [Verderber] couldn't send him into somebody's home . . . ." (*Id.* at 68:8–11.) Verderber could not send Plaintiff out on Allied shipments because Verderber "would probably get fined if the situation ever happened."[10] (*Id.* at 66:22–2.) Verderber informed Griffin that he "could only go on limited jobs such as a commercial job which is not household goods, not going in somebody's home," but that work was limited because Astro "didn't have much of it." (*Id.* at 68:6–14.) Since Griffin would be limited in the number of jobs he would be assigned to, his average weekly hours would decrease. (*Id.* at 68:24–69:13.) Griffin replied that Verderber would "hear from [his] lawyer." (*Id.* at 68:15–16.) According to Verderber, Griffin was not terminated. (*Id.* at 68:17–21.)

Godwin also failed his background check, and, as a result, Astro terminated his employment. (Defs. 56.1 ¶ 14; Pls. Counter 56.1 ¶ 14; Verderber Dep. 72:2–13.) Astro advised Godwin that, based on his criminal record, Astro could not allow him to enter customers' homes.

---

[10] Allied sent Verderber a letter stating that "anybody put on [Allied] shipments that did not have a background check who was hired and put on it would be fined." (Verderber Dep. 67:21–24.) Therefore, Griffin could not have worked on any Allied shipments. (*Id.* at 73:6–9.)

(Defs. 56.1 ¶ 15; Pls. Counter 56.1 ¶ 15.)  According to Verderber, Godwin was not offered the same opportunity as Griffin to explain his failed background check or to continue to work for Astro.  (Verderber Dep. 72:14–24.)  Verderber responded differently to Griffin and Godwin's failed background checks because he "had a longer relationship" with Griffin, but he felt he "couldn't do anything else with" Godwin.  (*Id.*)  Verderber determined that Godwin could not have worked on any non-Allied shipments due to liability concerns.  (*Id.* at 73:10–14.)

## II.  Discussion

### a.  Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic Sec., L.L.C.*, --- F. App'x ---, ---, 2014 WL 943933, at *1 (2d Cir. Mar. 12, 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394,

398 (2d Cir. 2000).

### b. Plaintiffs' motion for partial summary judgment

Plaintiffs Griffin and Godwin assert that all three Defendants violated the NYSHRL by terminating them because of their criminal convictions. (Compl. ¶ 23.) Plaintiffs argue that their termination for failure to meet the Adjudication Guidelines was a *per se* violation of NYSHRL § 296(15) and New York Corrections Law § 752 because the Adjudication Guidelines did not take into account all of the enumerated factors set forth in Corrections Law § 753. Plaintiffs argue that, because the Adjudication Guidelines applied universally, and termination was automatic rather than individualized in accordance with the statutory factors, the application of those Adjudication Guidelines violates the NYSHRL and entitles them to judgment as a matter of law.[11]

### i. Legal Framework

The NYSHRL "limits the ability of employers to make employment decisions adverse to employees or job applicants on the basis of criminal history" and "provides protection even after conviction, based on a public policy of welcoming those formerly convicted back into the labor force." *Smith v. Bank of Am. Corp.*, 865 F. Supp. 2d 298, 302–03 (E.D.N.Y. 2012). The statute provides, in pertinent part:

> It shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association . . . to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a

---

[11] Plaintiff initially moved for partial summary judgment on a second ground, arguing that Defendants unlawfully denied Plaintiffs employment because of their criminal records. (Pl. Mem. 6.) However, Plaintiffs withdrew this argument because of the "sharp dispute of fact concerning the nature of the laborer positions held by Griffin and Godwin." (Pl. Opp'n Mem. 12.) Plaintiffs "now recognize that material disputes of fact preclude summary judgment" on this issue and argue that whether "proper consideration of the factors would bar Griffin and Godwin from employment must go to the jury." (*Id.*)

> finding of a lack of "good moral character" which is based upon
> his or her having been convicted of one or more criminal offenses,
> when such denial is in violation of the provisions of article twenty-
> three-A of the correction law.

N.Y. Exec. Law § 296(15). This provision incorporates Article 23-A of New York Correction

Law, which governs the licensure and employment of persons previously convicted of one or

more criminal offenses. Article 23-A of the New York Correction Law provides in pertinent

part:

> No application for any license or employment, and no employment
> or license held by an individual, to which the provisions of this
> article are applicable, shall be denied or acted upon adversely by
> reason of the individual's having been previously convicted of one
> or more criminal offenses, or by reason of a finding of lack of
> 'good moral character' when such finding is based upon the fact
> that the individual has previously been convicted of one or more
> criminal offenses, unless:
>
>     (1) there is a direct relationship between one or more of the
> previous criminal offenses and the specific license or employment
> sought or held by the individual; or
>
>     (2) the issuance or continuation of the license or the granting or
> continuation of the employment would involve an unreasonable
> risk to property or to the safety or welfare of specific individuals or
> the general public.

N.Y. Correct. Law § 752.[12] "The Legislature has clarified that a direct relationship [between the

prior criminal offense and the license or employment sought] means that the nature of [the]

---

[12] Although Astro did not separately move for summary judgment, in its memorandum of law in support of Allied's and Sirva's motion and in opposition to Plaintiffs' motion, Astro argues that this claim must be dismissed because Article 23-A of New York Correction Law does not provide for a private cause of action. Astro is correct that Article 23-A does not provide for a private cause of action. With regard to actions by private employers, Article 23-A is enforceable by the New York State Division of Human Rights and the New York City Commission on Human Rights. *See* N.Y. Correct. Law § 755. However, as discussed above, because Plaintiffs bring this cause of action pursuant to the section of the New York State Human Rights Law which incorporates Article 23-A, and the New York State Human Rights Law does provide for a private cause of action, Plaintiffs can proceed with this claim. *See* N.Y. Exec.Law § 297(9) (providing that any person "aggrieved by an unlawful discriminatory practice" may sue in a court of competent jurisdiction); *Smith v. Bank of Am. Corp.*, 865 F. Supp. 2d 298, 304 (E.D.N.Y. 2012); *Pelaez v. Life Alert, Inc.*, No. 09-CV-1668, 2011 WL 1321999

criminal conduct for which the person was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities necessarily related to the license, opportunity, or job in question." *Acosta v. New York City Dep't of Educ.*, 16 N.Y.3d 309, 315 (2011) (citations and internal quotation marks omitted). As to the meaning of "unreasonable risk," "the Legislature has not provided a statutory definition of the phrase 'unreasonable risk' in this context 'for the obvious reason that a finding of unreasonable risk depends upon a subjective analysis of a variety of considerations relating to the nature of the license or employment sought and the prior misconduct.'" *Id.* (quoting *Matter of Bonacorsa v. Van Lindt*, 71 N.Y.2d 605, 612 (1988)). In making a determination as to whether either the "direct relationship" exception or the "unreasonable risk" exception applies, an employer is required to consider the following factors:

> (a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
> (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
> (c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
> (d) The time which has elapsed since the occurrence of the criminal offense or offenses.
> (e) The age of the person at the time of occurrence of the criminal offense or offenses.
> (f) The seriousness of the offense or offenses.
> (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
> (h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753(1).

---

(E.D.N.Y. Mar. 30, 2011); *see also Clemons v. WellPoint Companies, Inc.*, No. 11-CV-0084, 2013 WL 1092101 (N.D.N.Y. Mar. 15, 2013) (plaintiffs asserted N.Y. Executive Law § 296(16) claim, which prohibits unlawful inquiry into an individual's criminal history, against their employer Wellpoint Companies, Inc., a healthcare company).

### ii. Analysis

It is undisputed that Plaintiffs were hired and were advised later that they had to submit to a background check. After Plaintiffs failed the background checks, they ceased employment at Astro. There is a dispute as to whether Griffin was terminated, but it is undisputed that Godwin was terminated. Plaintiffs request partial summary judgment on the grounds that, because the Adjudication Guidelines applied automatically to someone with their criminal convictions, the Adjudication Guidelines *per se* violated the NYSHRL, since the application of the Adjudication Guidelines was not individualized, entitling them to judgment as a matter of law. For the following reasons, Plaintiffs' motion for partial summary judgment is denied.

### 1. Allied and Sirva

Allied and Sirva were not Plaintiffs' employer, *see* Part II.b.ii.C, nor did they cause Plaintiffs' terminations. Therefore, Allied and Sirva are not liable to Plaintiffs under the NYSHRL. Allied required its agents, including Astro, Plaintiffs' employer, to allow only those individuals who had successfully passed a background screening to work on any Allied jobs. Allied did not require that individuals who did not pass the background screening be fired. These individuals were only not allowed to work on Allied shipments. Although this fact influenced Astro's decision as to whether or not to terminate Plaintiffs, Allied and Sirva did not terminate Plaintiffs nor did they require their termination. Thus, Plaintiffs' motion for summary judgment as to Allied and Sirva is denied.

### 2. Astro

Plaintiffs' motion for summary judgment as to Astro is also denied. The parties do not dispute that Astro was Plaintiffs' employer. However, the parties dispute whether Griffin was terminated. Viewing the facts in the light most favorable to Defendants, as the Court is required

to do in considering Plaintiffs' summary judgment motion, there is a genuine dispute of material fact as to whether Griffin was terminated. According to Verderber, he planned to continue employing Griffin, because he had known him for a long period of time, but Griffin decided to leave once he discovered he would not be allowed to work on Allied's jobs. Thus, a reasonable jury hearing Verderber's testimony could conclude that Griffin was not terminated by Astro but rather decided to leave after he was told that he could no longer work on jobs belonging to Allied. This material issue of fact as to whether Griffin was terminated by Astro, precludes the court from granting Griffin's summary judgment motion.

Even if this Court were to assume that Griffin was in fact terminated, the Court has not found, and Plaintiffs have not cited to, any legal support for Plaintiffs' argument that the failure to comply with the requirements of § 753 constitutes a *per se* violation of the NYSHRL, entitling Plaintiffs to judgment as a matter of law. A plain reading of § 753 requires an employer to consider *all* eight of the listed factors. *See Acosta*, 16 N.Y.3d at 316 ("A failure to take into consideration each of these factors results in a failure to comply with the Correction Law's mandatory directive."). There is limited caselaw concerning a private employer's failure to consider all eight of § 753's enumerated factors. In the public context, New York courts have determined that the failure of an agency to consider all eight factors is an abuse of discretion. *See id.* at 318 ("It is, of course, improper for courts to 'engag[e] in essentially a re-weighing' of the Correction Law § 753 factors, but, on this record, it is plain that the DOE *failed to consider all of the factors* in making its determination as to whether the unreasonable risk' exception applied to petitioner's application, rendering its denial of that application arbitrary and

capricious."[13] (emphasis added) (citation omitted)); *Exum v. New York City Health & Hospitals Corp.*, 964 N.Y.S.2d 58 (Sup. Ct. 2012) ("The Court finds that since all the factors enumerated in Correction Law § 753 were not properly addressed and considered, the determination that petitioner must be disqualified is arbitrary, capricious, and erroneous as a matter of law."); *Soto v. New York State Office of Mental Retardation & Developmental Disabilities,* 907 N.Y.S.2d 104 (Sup. Ct. 2010) ("The failure of an agency to properly consider Correction Law § 753 factors will render its decision to deny licensure or employment as arbitrary, capricious and an abuse of discretion."); *Black v. New York State Office of Mental Retardation & Dev. Disabilities*, 858 N.Y.S.2d 859, 862 (Sup. Ct. 2008) ("When all eight factors set forth in Correction Law § 753 are considered in making a determination pursuant to Correction Law § 752 concerning employment of a person with a criminal conviction and the positive factors are balanced against the negative factors, the resulting decision is neither arbitrary nor capricious nor does it constitute an abuse of discretion."); *see also Formica Constr., Inc. v. Mintz*, 885 N.Y.S.2d 298, 300 (App. Div. 2009) (the Supreme Court properly annulled the decision of the New York Department of Consumer Affairs to a construction contractor's application to renew his license based on his recent felony conviction, where the DCA did not set forth its reasoning for its determination until it was compelled to do so by commencement of Article 78 proceeding, and the reasoning that DCA articulated in its answer to petition did not reflect that it considered all eight statutory factors).

---

[13] Astro argues that the court in *Acosta* independently reviewed the background of the petitioner in order to conclude that the rejection of the petitioner's employment application failed to comply with the statute, and that "if the background of the petitioner independently would have supported the decision to deny petitioner's application it appears that the Court would not have found it to be arbitrary and capricious and would have sustained it." (Astro Mem. 7.) However, this is not entirely clear. First, the court in *Acosta* specifically stated that the court was not to re-weigh the factors, and highlighted the fact that the evidence showed that the defendant failed to consider *all* eight factors. Second, here, the action is against a private employer and therefore not subject to arbitrary and capricious review.

Where an agency's decision is determined to be arbitrary and capricious, the decision is remanded to the agency for a consideration of all eight factors. *See El v. New York City Dep't of Educ.*, 886 N.Y.S.2d 70 (Sup. Ct. 2009) ("The appropriate remedy is a remand to the Board for a detailed consideration of all eight factors . . . ."); *La Cloche v. Daniels*, 755 N.Y.S.2d 827, 831 (Sup. Ct. 2003) (Secretary of State could not deny plaintiff's application solely on the basis of basis of a prior conviction "without inquiry into the factors set forth in Correction Law § 753," and therefore proceeding was remanded for rehearing). The remedy for a private employer's failure to consider all eight of § 753's enumerated factors is less clear.

Here, Defendants did not evaluate all eight factors at the time of Plaintiffs' termination and, thus, violated § 753 of the New York Correction Law. *See Acosta*, 946 N.E.2d at 733 ("A failure to take into consideration each of these factors results in a failure to comply with the Correction Law's mandatory directive."). However, it does not follow that a violation of New York Correction Law is a *per se* violation of the NYSHRL. The central purpose of judicial review of employment decisions is to ensure that conclusions are not based on "speculative inferences unsupported by the record." *Soto*, 907 N.Y.S.2d at 104. Without the ability to remand for a redetermination with consideration of all of § 753's factors, the Court finds that the proper course of action is to evaluate whether, applying the required balancing of factors, Astro would have terminated Plaintiffs' employment. As Plaintiffs now agree, (Pl. Reply 7–8), this inquiry involves disputed facts and, thus, is inappropriate for determination by the Court. *Cf. Acosta*, 946 N.E.2d at 634–35 (a "finding of unreasonable risk depends upon a subjective analysis of a variety of considerations"). Plaintiffs' motion for partial summary judgment is denied.

### c. Defendants' Motion for Summary Judgment

Allied and Sirva assert that they cannot be held liable for any alleged violation of NYSHRL because they do not qualify as Plaintiffs' employers under the law. Allied and Sirva also argue that even assuming they were employers under the NYSHRL, Plaintiffs' terminations were lawful, because the Adjudication Guidelines took the § 753 considerations into account by removing employees with prior violent sexual offenses against minors from situations where they would enter homes with children, and that application of all of the required factors clearly indicates that Plaintiffs' criminal convictions directly related to their employment. Allied and Sirva further argue that, assuming that they qualify as employers under NYSHRL, Plaintiffs' discrimination claim based on their prior criminal convictions is preempted by the Federal Aviation Administration Authorization Act of 1994, 108 Stat. 1605-1606, as amended and recodified as part of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14501(c). The Court concludes that Allied and Sirva are not Plaintiffs' employees and are therefore not subject to liability under § 296(15).[14]

### i. Allied and Sirva are not Plaintiffs' employers

Allied and Sirva argue that they cannot be held liable because they were not Plaintiffs' employers. (Defs. Mem. 14.) Under the NYSHRL, liability for employment discrimination based on criminal history may be imposed on "any person, agency, bureau, corporation or association" who "den[ies] . . . employment to any individual by reason of his or her having been convicted of one or more criminal offenses . . . , when such a denial is in violation of article

---

[14] Because the Court finds that Allied and Sirva are not Plaintiffs' employers, the Court does not address Allied's and Sirva's alternative arguments in support of their motion.

twenty-three-A of the correction law." [15] N.Y. Exec. Law § 292(15). The term "person" includes one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." N.Y. Exec. Law § 292(1).

Plaintiffs argue that because § 296(15) on its face is not strictly limited to employers, as compared to other provisions of § 296, whether Allied and Sirva were Plaintiffs' employers is "wholly immaterial." (Pl. Opp'n 9.) Allied and Sirva argue that § 296(15)'s plain meaning is that no *employer* may "deny employment," since only an employer can deny employment. (Defs. Reply 10.) Therefore, argue Allied and Sirva, Plaintiffs must show that they qualified as employers under the NYSHRL. *See Idlisan v. NYS Dep't of Taxation & Fin.*, No. 12-CV-1787, 2013 WL 2898050, at *5 (N.D.N.Y. June 13, 2013) (dismissing the plaintiff's § 296(15) claim against a non-employer individual recruiter because the plaintiff failed to allege that the recruiter had any ownership interest in the employer or any power other than to carry out personnel decisions made by others). Plaintiffs argue that, because they need not prove that Allied and Sirva were Plaintiffs' employers, Plaintiffs "need only establish that the companies denied them employment or compelled Astro to deny them employment." (Pl. Opp'n 9.) The Court agrees with both parties. As argued by Plaintiffs, the Court finds that Plaintiffs must show that Allied and Sirva denied them employment. However, as argued by Allied and Sirva, the Court finds that to "deny employment," the denying entity must be an employer as understood by the caselaw interpreting the NYSHRL. *See Acosta*, 16 N.Y.3d at 320 ("The Legislature has

---

[15] New York Corrections Law § 751 only applies to the individual's employer. *Soto v. New York State Office of Mental Retardation & Developmental Disabilities*, 907 N.Y.S.2d 104, 104 (Sup. Ct. 2010) ("Correction Law § 751 applies Article 23–A to any public or private employer."). Under New York Corrections Law, a "private employer" means "any person, company, corporation, labor organization or association which employs ten or more persons." N.Y. Correct. Law § 750(2).

determined that, as a general rule, it is unlawful for a public or private *employer* to deny an application for a license or employment on the ground that the applicant was previously convicted of a crime." (emphasis added)).

In interpreting the scope of "employer" as defined under § 296 to include individuals other than an employee's direct employer, courts have required a showing "that [the] person has: (1) any ownership interest in the employer; or (2) the power to do more than carry out personnel decisions made by others." *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 371 (E.D.N.Y. 2012); *see Lore*, 670 F.3d at 169 (holding, with regard to plaintiff's § 296(15) claim, that no individual may be held liable "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314–15 (2d Cir. 1995)). In order to determine whether an individual defendant has sufficient authority under the second prong, courts employ the "economic realities" test, and balance "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Scalera*, 848 F. Supp. 2d at 371 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). "Conversely, individuals may be held liable if they 'actually participate[] in the conduct giving rise to a discrimination claim.'" *Lore*, 670 F.3d at 169 (quoting *Tomka*, 66 F.3d at 1314–15).

It is also "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the acts forbidden . . . or to attempt to do so." N.Y. Exec. Law § 296(6).[16] "This,

---

[16] Allied and Sirva argue that it is improper for Plaintiffs to raise an "aiding and abetting" cause of action pursuant to § 296(6) for the first time in opposition to their motion for summary judgment, because "aiding and abetting" is an independent cause of action separate

again, requires that the defendant actually participated in the conduct giving rise to the claim of discrimination, and that the aider and abettor share the intent or purpose of the principal actor." *Idlisan*, 2013 WL 2898050, at *4–5 (internal quotation marks omitted) (quoting *Robles v. Goddard Riverside Cmty. Ctr.*, No. 08-CV-4856, 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009) (citations omitted)); *see also Tomka*, 66 F.3d at 1317 ("a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYS]HRL"). When a plaintiff seeks to sue an additional defendant, other than a direct employer, and that additional defendant is a business, courts have also applied the four economic realities factors to determine whether the two companies are "joint employers." *See Voltaire v. Home Servs. Sys., Inc.*, 823 F. Supp. 2d 77, 97 (E.D.N.Y. 2011) (explaining the use of the four factors to determine whether two entities are "joint employers" for purposes of the NYSHRL, and noting that the most essential factor is whether the second entity had the power to control the employee's conduct).

Allied and Sirva had no employment relationship with Plaintiffs. Neither did Allied or Sirva have any ownership interest in Astro, Plaintiffs' employer. *See Nicholson v. Staffing Auth.*, No. 10-CV-2332, 2011 WL 344101, at *2 (S.D.N.Y. Feb. 1, 2011) ("In *Patrowich v. Chemical*

---

from a cause of action for primary liability, and Plaintiffs "belated attempt to raise this claim for the first time in its opposition is improper." (Defs. Reply 13.) Section 296(6) is not a standalone cause of action, it is only viable in conjunction with a forbidden act stated in another provision of § 296. Although Plaintiffs' Complaint does not expressly identify § 296(6) as a basis of liability, Plaintiffs have always alleged that Allied's and Sirva's actions constituted the denial of employment because of Plaintiffs' criminal convictions. In Plaintiffs' memorandum in support of their motion for partial summary judgment, they specifically stated that Astro acted "at the direction of Sirva and Allied." (Pls. Mem. 6.) Therefore, the Court does not find that the aiding and abetting cause of action is raised for the first time in Plaintiffs' opposition to Defendants' motion for summary judgment. In any event, the prohibition against recognizing arguments raised for the first time in a motion brief is only prudential. *See Keefe on Behalf of Keefe v. Shalala*, 71 F.3d 1060, 1066 (2d Cir. 1995) ("*Normally*, we will not consider arguments raised for the first time in a reply brief, let alone after oral argument." (emphasis added)).

*Bank*, the New York Court of Appeals defined 'employer' narrowly to include only an individual 'shown to have an ownership interest in [the business employing the plaintiff] or power to do more than carry out personnel decisions made by others.'" (alteration in original)).  Nor did Allied and Sirva have any other liability-engendering authority over Plaintiffs.  *See Scalera*, 848 F. Supp. 2d at 371 (under the economic realities test, four factors must be balanced: whether one "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.").  Allied and Sirva did not have the authority to hire or fire Godwin or Griffin.  *Cf. Voltaire v. Home Servs. Sys., Inc.*, 823 F. Supp. 2d 77, 97 (E.D.N.Y. 2011) (issues of fact as to whether separate entity could be considered plaintiff's joint employer where the entity also interviewed plaintiff, had the ability to approve her hiring, and the entity "may have had some control over whether employees were dismissed or retained).  Nor have Plaintiffs presented any evidence that Allied or Sirva controlled their work schedules, determined their rate or method of payment or maintained any of their employment records.

According to Thomas Lambert, Director of Agency Services at Allied, Allied did not instruct Astro to terminate Griffin's or Godwin's employment and no one had any advance notice of the termination of their employment.  (Lambert Decl. ¶ 20.)  Plaintiffs dispute this statement and assert that Allied informed Astro that Griffin and Godwin could not conduct any business on behalf of Allied.  (Pls. Counter 56.1 ¶ 45.)  However, rather than disprove Allied's position, Plaintiffs' argument further supports Allied's claim that it had no authority to fire Griffin or Godwin – Allied simply had the authority to exclude them from working on Allied's assignments.  Allied and Sirva did not supervise or control Griffin's or Godwin's work schedules

or conditions of employment.  They did not determine the rate and method of payment.  They did not maintain employment records, and they did not exercise control over the employees of Astro.

Sirva is the parent company of Van Lines, which is the parent company of Allied.  Sirva has no contractual relationship with Astro, and Allied's relationship with Astro is purely contractual.  The Allied-Astro agency contract specifically disavows any joint employer relationship between Allied and Astro.  Although Allied requires Astro and other agents to provide screened, qualified individuals to work on Allied's shipments, Allied does not control the employees.  In fact, both Griffin and Godwin testified at their depositions that they had no direct communication with Allied.  *See, e.g.*, *Dinah v. Salzman Electric Co., Inc.*, 2005 N.Y. Misc. LEXIS 3591 (Sup. Ct. 2005) (contractor who determined that sub-contractor's employee could not work at any of its job site did not qualify as an employer under the NYSHRL because the contractor did not set the plaintiff's wage, collect taxes, provide insurance or other benefits for plaintiff).

Even under the "aiding and abetting" standard, the evidence does not establish that Sirva or Allied denied Griffin or Godwin employment.  Allied and Sirva established the Certified Labor Program that applied nationally and required their agents to run a background check on any individual who worked on an Allied delivery.  Under the Adjudication Guidelines, a felony conviction for any sexual offense permanently disqualified the individual from any jobs performed under Allied interstate authority.  However, Allied did not require the termination of any disqualified individual, and an agent, such as Astro, could continue to employ the individual and assign him to jobs conducted under the agent's own authority.  Therefore, at most, Allied and Sirva were responsible for, or caused, a change in Griffin's and Godwin's job responsibilities.  They did not cause Griffin and Godwin to be denied employment.  Astro made

separate employment decisions respecting Griffin and Godwin, which decisions, according to Astro, were based on (1) the practical reality that any individual who could not work on Allied projects would not be able to work on 70-80% of Astro's projects, and (2) Astro's own determination that it was not safe or wise to send convicted sex offenders into people's homes, where they could be left alone unsupervised. (Defs. 56.1 ¶ 15; Pls. Counter 56.1 ¶ 15; Verderber Dep. 66:22–2, 68:8–14.) The fact that Allied informed Astro that Griffin and Godwin could not conduct any business on behalf of Allied is not sufficient to attribute liability to Sirva or Astro.

No genuine dispute as to any material fact exists concerning Allied and Sirva's liability under NYSHRL. Therefore, Allied's and Sirva's motions for summary judgment are granted.

## III. Conclusion

For the reasons discussed above, the Court denies Plaintiffs' partial summary judgment motion and grants Allied's and Sirva's summary judgment motion, dismissing Plaintiffs' NYSHRL claim against them and dismissing them from this action.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: May 29, 2014
      Brooklyn, New York