UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

TRATHONY GRIFFIN, MICHAEL GODWIN,
and FRANK CALLACE

                              Plaintiffs,            **MEMORANDUM & ORDER**
                                                     11-CV-1844 (MKB)

            v.

ASTRO MOVING AND STORAGE CO.
INC.,

                              Defendant.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiffs Trathony Griffin, Michael Godwin and Frank Callace commenced this action

against Defendant Astro Moving and Storage Co. Inc. seeking minimum wage and overtime

payments pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, and the New

York Labor Law (the "NYLL").[1]  After a jury trial, the jury found Defendant liable to Plaintiffs

for overtime wages under both the FLSA and the NYLL and determined that Defendant's failure

to pay Plaintiffs' overtime was willful.[2]  (Docket Entry No. 70.)  The jury awarded compensatory

damages to Griffin, Godwin and Callace in the amounts of $750.00, $385.00 and $3350.00

---

        [1]  Plaintiffs Griffin and Godwin also brought claims for race discrimination under 42
U.S.C. § 1981 and New York Executive Law section 296, as well as a claim for discrimination
based on their criminal history under New York Executive Law section 296(15).  In a
Memorandum and Order dated May 29, 2014, the Court granted the motion to dismiss the
Complaint as to former defendants Sirva, Inc., and Allied Van Lines, Inc., against whom Griffin
and Godwin asserted claims under New York Executive Law section 296(15).  *Griffin v. Sirva,
Inc.*, No. 11-CV-1844, 2014 WL 2434196 at *14 (E.D.N.Y. May 29, 2014).  The Court also
denied Griffin and Godwin's motion for partial summary judgment on the issue of liability as to
their claim under New York Executive Law section 296(15).  *Id.*

        [2]  The jury found no liability as to Plaintiffs' remaining claims.  (Docket Entry No. 70.)

respectively.  (*Id.*)  Currently before the Court are (1) the parties conflicting submissions as to the amount of damages owed to Plaintiffs, and (2) Plaintiffs' motion for attorneys' fees.  For the reasons discussed below, the Court awards damages as follows: $1687.50 to Griffin; $866.25 to Godwin; and 7537.50 to Callace.  The Court also awards attorneys' fees in the amount of $52,022.50.

## I.  Background

On November 20, 2014, a jury found Defendant liable to Plaintiffs for overtime wages in violation of the FLSA and the NYLL, and awarded Plaintiffs compensatory damages.  (Docket Entry No. 70.)  The jury also found Defendant's conduct in failing to pay Plaintiffs their overtime wages to be willful.  (*Id.*)

### a.  The parties' proposed damages calculation

The Court directed the parties to submit proposed calculations of the total damages owed to Plaintiffs, including liquidated damages.  (Order dated Dec. 11, 2014.)  Plaintiffs' damages calculations, including liquidated damages, are: $1687.50 for Griffin, $866.25 for Godwin, and $7537.50 for Callace.  (Pl. Letter dated Dec. 15, 2014 ("Pl. Damages Ltr.") 1, Docket Entry No. 73.)  Defendant argues that Plaintiffs are not entitled to liquidated damages under the FLSA or NYLL because, although "not paying overtime was intentional, not inadvertent, it was based on a good faith belief that [it] was complying with the law." (Def. Ltr. dated Dec. 31, 2014 ("Def. Damages Ltr.") 1, Docket Entry No. 75.)  Defendant further argues that if the Court does award liquidated damages to Plaintiffs, Plaintiffs are not entitled to "cumulative" liquidated damages under both the FLSA and NYLL.  (*Id.*)

### b.  Attorneys' fees

Plaintiffs seek attorneys' fees in the total amount of $52,022.50, comprising of

$48,480.00 for counsel, $2497.50 for Plaintiffs' paralegal, and $1045 in costs. (Pl. Reply Mem. in Supp. of Mot. for Att'y Fees 4, Docket Entry No. 77.) Plaintiffs assert that their attorney is a 1987 *cum* laude graduate of Harvard Law School, where he was General Editor of the Harvard Civil Rights-Civil Liberties Law Review. (Decl. of Stuart Lichten in Support of Mot. for Att'y Fees ("Lichten Decl.") ¶ 3, Docket Entry No. 71.) Since 1990 to the present, counsel has concentrated his litigation practice in labor and employment law. (*Id.*) Plaintiffs seek attorneys' fees for 121.2 hours of work, billed at a rate of $400.00 per hour for counsel, and paralegal fees for a total of 33.3 hours worked, billed at a rate of $75.00 per hour. (*Id.* ¶¶ 6–7, 10.)

Defendant asserts that the fee amount sought by Plaintiffs for their counsel should be reduced because Plaintiffs only prevailed on their unpaid overtime wages claim, "which comprised only a small portion of the damages claim . . . ." (Def. Mem. in Opp'n to Pl. Mot. for Att'y Fees ("Def. Fee Mem.") 3, Docket Entry No. 74.) Defendant also argues that the "request for fees for the paralegal's time should be denied." (*Id.* at 6.) Defendant asserts that the paralegal "sat quietly in the rear of the courtroom and provided no visible services." (*Id.*) Defendant further asserts that in addition to not being "present on the last day of trial, when the jury was deliberating . . . . [the paralegal] bills for her time." In addition to challenging the fee amount billed, Defendant also challenges the hourly rate requested for Plaintiffs' counsel as too high. (*Id.* at 4.) Defendant contends that the rate should be $300 per hour instead of $400. (*Id.*)

## II. Discussion

### a. Liquidated damages

#### i. The FLSA

The FLSA provides for the payment of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "the employer shows

to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that his act or omission . . . was not a violation of the [FLSA]." 29 U.S.C. § 260; *see also Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) ("[T]he FLSA provides for 'the payment of wages lost and an additional equal amount as liquidated damages . . . .'" (citing to 29 U.S.C. §§ 216(b), 260)). The employer bears the burden of proving good faith. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142–43 (2d Cir. 1999) (citing *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997); *Gortat*, 949 F. Supp. 2d at 380 ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." (citing *Herman,* 172 F.3d at 142)).

To establish good faith, "the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman,* 172 F.3d at 142–43; *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (To establish good faith, a defendant must produce "plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it."). A court can elect not to award liquidated damages if the employer demonstrates to the satisfaction of the Court that it acted in "good faith and had reasonable grounds for believing that its actions were lawful." *Gortat*, 949 F. Supp. 2d at 380. "Employer ignorance of the law is insufficient to establish good faith," and "[a]dherence to industry practice, when such practice violates the FLSA, is likewise insufficient." *Hellmers v. Town of Vestal, N.Y.*, 969 F. Supp. 837, 848 (N.D.N.Y. 1997) (finding defendant did not establish good faith under the FLSA where "[d]efendant all but admits its adherence to customary practice and its failure to attempt to ascertain whether [p]laintiff's . . . activities were compensable under the FLSA"); *Herman*, 172 F.3d at 142–43 (2d Cir. 1999) (finding that

defendant did not establish good faith under the FLSA where defendant "had extensive knowledge of the FLSA's requirements, but utterly failed to take the steps necessary to ensure [its] pay practices complied with the Act"); *Brock,* 833 F.2d at 19–20 (finding defendant did not establish good faith under the FLSA where defendant argued that its employee pay rates "adhere[d] to industry practice"); *Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464, 2010 WL 1223606, at *18 (E.D.N.Y. Mar. 26, 2010) (finding that defendant did not establish good faith under the FLSA where defendant argued that "although not able to comprehend the [FLSA] laws, [he] had obtained a poster of such wage and hour laws," and "he somehow had a good faith reason not to read and implement the laws his poster-hanging noticed".)  Where a jury finds a defendant's conduct to be willful, courts "typically do not exercise their discretion to reduce an award of liquidated damages under the FLSA." *Gortat,* 949 F. Supp. 2d at 380; *see also Pineda-Herrera v. Da-Ar-Da., Inc.*, No. 09-CV-5140, 2011 WL 2133825, at *5 (E.D.N.Y. May 26, 2011) (noting that the jury found a willful violation of both the FLSA and NYLL and therefore "the Court will not exercise its discretion to reduce the award of liquidated damages available under the FLSA").

### ii.   The NYLL

The NYLL allows for the award of liquidated damages upon a finding that the employer's violation was "willful."  N.Y. Labor Law § 663(1).  An employer acts willfully under the NYLL if it "knowingly, deliberately, or voluntarily disregards its obligation to pay wages." *Moon v. Kwon*, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) (citing to *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (quoting *P & L Group, Inc. v. Garfinkel*, 541 N.Y.S.2d 535, 537 (App. Div. 1989))); *see also Lanzetta v. Florio's Enters., Inc.*, No. 08-CV-6181, 2011 WL 253961, at *7 (S.D.N.Y. Jan. 25, 2011) (addressing NYLL and FLSA, noting that a violation

is willful "when an employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute" (internal quotation marks and citations omitted)). It does not require a showing that the employer acted maliciously or in bad faith. *Moon*, 248 F. Supp. 2d at 235. At all relevant times, the NYLL allowed for damages equal to one-fourth of the unpaid wages due under the statute.[3] *Id.*

### iii. Recovery under both the FLSA and the NYLL

The issue of whether a plaintiff is entitled to recover liquidated damages under both the FLSA and the NYLL for the same conduct has not been decided by the Second Circuit. Some district courts in the Circuit have determined that because the purpose of the liquidated damages provisions of both statutes is to deter wage-and-hour violations, a plaintiff is not entitled to liquidated damages under both statutes. *See Greathouse v. JHS Sec., Inc.*, No. 11-CV-7845, 2012 WL 3871523, at * 7 (S.D.N.Y. Sept. 7, 2012) ("[E]mployees are not entitled to recover liquidated damages under both the NYLL and the FLSA because [l]iquidated damages under both statutes compensate the exact same harm — namely, the harm caused by the defendant's culpable state of mind." (internal quotation marks and citations omitted)); *Chun Jie Yin v. Kim*, No. 07-CV-1236, 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008) ("To be sure, while the New York provision is available only for willful violations — thereby suggesting a punitive rather than compensatory goal, the FLSA characterizes its liquidated damages provision as compensatory rather than punitive in nature. But that distinction is not persuasive." (internal quotation marks and citations omitted)); *Pineda-Herrera*, 2011 WL 2133825, at *5 ("As

---

[3] In 2011, the NYLL was amended to allow for liquidated damages equal to 100% of wages due under the statute. (Wage Theft Prevention Act, S. Bill 8380, 23rd Leg. Session § 7, 2010 N.Y. ALS 564). Because the violations in this case occurred prior to the amendment of the statute in 2011, the Court applies the statute that was in effect prior to the 2011 Amendment, N.Y. Labor Law section 663(1) (2009).

evidenced by the scienter requirement of each statute, both forms of damages seek to deter wage-and-hour violations. Both do so in a manner calculated to compensate the party harmed. Because this Court finds no persuasive basis to distinguish the two forms of damages, the [c]ourt will award the greater of the two where both forms of damages are otherwise available for the same violations." (internal quotation marks and citations omitted)).

In contrast, other courts have concluded that the liquidated damages provisions of the FLSA and the NYLL serve different purposes; that liquidated damages under the FLSA are intended to compensate employees for lost wages and liquidated damages under the NYLL are meant to be punitive. *Jaramillo v. Banana King Rest. Corp.*, No. 12-CV-5649, 2014 WL 2993450, at *6 (E.D.N.Y. July 2, 2014) (adopting report and recommendation, which recognized that permitting recovery of liquidated damages under both the FLSA and NYLL "appears to be the majority approach" and recommending an award of liquidated damages under both statutes); *Gonzalez v. Marin*, No. 12-CV-1157, 2014 WL 2514704, at *6 (E.D.N.Y. Apr. 25, 2014) (noting that awarding liquidated damages under both the FLSA and NYLL "appears to be the majority approach") (citations omitted); *Siemieniewicz v. CAZ Contracting Corp.*, No. 11-CV-0704, 2012 WL 5183375, at *12 (E.D.N.Y. Sept. 21, 2012) ("I am persuaded that the two statutory provisions serve different purposes and are therefore not mutually exclusive: the liquidated damages provision under the FLSA is compensatory, rather than punitive, while the comparable state law provision is a penalty designed to deter the willful withholding of wages.") (citing *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)); *Vasquez*, 2010 WL 1223606, at *18 ("Liquidated damages under [the] FLSA are based on a compensatory rather than a punitive rationale. . . . In contrast to federal law, an award of liquidated damages under New York law is punitive in nature."); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 261–62

(S.D.N.Y. 2008) ("[A] prevailing plaintiff who can justify both federal liquidated damages and state-law damages should be eligible to recover both, since they also serve fundamentally different purposes. Accordingly, we conclude that plaintiffs may be awarded both forms of relief." (internal citations and quotation marks removed)).

As pre-judgment interest is not allowed under the FLSA, some courts have recognized that liquidated damages under the FLSA are intended to act as a functional equivalent to pre-judgment interest and as such, are "not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman,* 172 F.3d at 142; *see also Reich*, 121 F.3d at 71. In contrast to the language of the FLSA which states that "an employer who violates the federal minimum wage and overtime provisions 'shall be liable' to employees for any unpaid overtime and minimum wages in an 'additional equal amount as liquidated damages,'" *Siemieniewicz*, 2012 WL 5183375, at *12 (citing 29 U.S.C. § 216(b)), the language of the NYLL only allows for liquidated damages if the violation of the statute is found to be "willful," demonstrating the punitive intent of the application of liquidated damages under the NYLL, *id.* (citing N.Y. Labor Law § 198). Under the NYLL, liquidated damages "'constitute a penalty' to deter an employer's willful withholding of wages due." *Reilly*, 181 F.3d at 265 (citing *Carter v. Frito–Lay, Inc.,* 425 N.Y.S.2d 115, 116 (App. Div. 1980), *aff'd.*, 438 N.Y.S.2d 80 (1981)).

### iv. Plaintiffs are entitled to liquidated damages

Defendant argues that neither the FLSA liquidated damages provision nor the NYLL liquidated damages provision should be applied in this case because (1) it had "a good faith belief that it was acting in accordance with the law based on the payroll custom and practice in the industry for decades," and, in any event, (2) its failure to pay overtime wages was

"intentional, but not 'willful' in the sense that it was known that those wages were due and failed to pay them in disregard of the law." (Def. Damages Ltr. 2)

### 1. Defendant has not shown it acted in good faith

Defendant fails to prove that it acted with good faith or had reasonable grounds for believing that its failure to pay overtime wages was lawful. Defendant acknowledges that it was familiar with and "followed what it believed to be the provisions of the Motor Carrier Act of 1935 . . . with respect to categories of employees that are exempt from overtime pay requirements," and that it "had a good faith belief that it was acting in accordance with the law based on payroll custom and practice in the industry in place for decades." (Def. Damages Ltr. 2.) Defendant acknowledges that it "did pay overtime wages to employees when it understand the employees were entitled to such overtime wages" under the FLSA. (*Id.*) However, Defendant has not shown that it attempted to determine whether it was required to pay Plaintiffs in accordance with the FLSA. Defendant instead argues that it followed the Motor Carrier Act and "payroll custom and practice in the industry for decades" and therefore while its failure to comply with the FLSA was "intentional, not inadvertent," it was in good faith. (*Id.*) This is insufficient to show that Defendant acted in good faith, as "[a]dherence to industry practice, when such practice violates the FLSA, is . . . insufficient." *Hellmers,* 969 F. Supp. at 848; *see also Brock,* 833 F.2d at 19–20 (2d Cir. 1987) (finding defendant did not establish good faith under the FLSA where defendant argued that its employee pay rates "adhere[d] to industry practice."). Because Defendant makes no additional arguments to support its good-faith claim, the Court cannot conclude that Defendant acted in good faith.

## 2. Defendant's failure to pay overtime wages was willful

For the same reasons that Defendant fails to show good faith under the FLSA, Defendant also fails to defeat the jury finding of willfulness under the NYLL.[4] Defendant argues that its failure to pay Plaintiffs' overtime wages "was intentional, but not 'willful.'" (Def. Damages Ltr. 2.) A violation is willful "when an employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Lanzetta,* 2011 WL 253961, at *7 (internal quotation marks and citations omitted). Plaintiffs demonstrated that Defendants "knowingly, deliberately, or voluntarily disregard[ed] its obligation to pay wages," under the NYLL, as Defendant was aware that the regulations existed, however, did not take steps to

---

[4] In a sentence in its letter opposing the award of liquidated damages, Defendant appears to make a motion pursuant to Rule 50 of the Federal Rules of Civil Procedure challenging the sufficiency of the evidence of willfulness that was presented to the jury. *See* (Def. Damages Ltr. 2.) ("There was no evidence presented to the jury that there was an intentional disregard of the law."). "A post-trial Rule 50(b) renewal motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury. Though a procedural requirement, it may not be waived by the parties or excused by the district court." *Bracey v. Bd. of Educ. of Bridgeport*, 368 F.3d 108, 117 (2d Cir. 2004) (citations omitted); *Ramos v Cnty. of Suffolk*, 707 F. Supp. 2d 421, 426 (E.D.N.Y. 2010) ("Rule 50(b) provides that a party may renew this motion after a verdict. Rule 50 does not permit a party to move for judgment as a matter of law for the first time after a verdict has been entered."); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013) (finding motion for judgement as a matter of law "meritless" where defendant failed to make a Rule 50(a) motion before submission of the case to the jury). As Plaintiffs correctly note, Defendant failed to make a Rule 50(a) motion prior to the submission of the question of willfulness to jury. Thus, Defendant has waived its right to now move pursuant to Rule 50(b) for judgment as a matter of law as to this issue.

Nor has Defendant demonstrated that it would suffer a manifest injustice if the Court does not consider its motion. The Second Circuit has made clear that the Court may entertain a Rule 50(b) motion even where a Rule 50(a) motion has not been made to "prevent manifest injustice." *See Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) ("It is well established that a reviewing court usually does not consider an issue not passed upon below . . . . and may grant judgment as a matter of law where no Rule 50 motion was made, if necessary to prevent "manifest injustice." (internal quotation marks and citations omitted); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998) (same) (quoting *Stephenson*); *Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 177–78 (E.D.N.Y. 2012) (same) (quoting *Stephenson*). Therefore, to the extent Defendant is attempting to make a Rule 50(b) motion, it is denied.

ensure that it was in compliance with the law.  (Def. Damages Ltr. 2 ("Astro followed what it believed to be the provisions of the Motor Carrier Act of 195 and the regulations with respect to categories of employees that are exempt from overtime pay requirements . . . .")  Defendant's argument that it was acting on the belief that the overtime laws did not apply is unavailing.  *See Moon*, 248 F.Supp. 2d at 231, 235 (finding FLSA and NYLL violations willful when the employer testified that he had knowledge of federal and state minimum wage and overtime laws and consulted outside attorneys for advice on those laws" but admitted that "he made no effort to seek specific legal advice on the issue"); *Vasquez,* 2010 WL 1223606, at *18 (finding that defendants actions were willful when the defendants knew of minimum wage and overtime laws and hung posters explaining such laws to the employees, but continued to pay employees regular rates for overtime hours, and determining that these actions demonstrated "reckless disregard" sufficient to show willfulness under the NYLL); *Ayres*, 12 F. Supp. 2d at 309 (rejecting good faith argument, finding plaintiffs entitled to liquidated damages for willfully violating NYLL when defendant offered no evidence that it "made reasonable inquiries into the relevant law, or that it actually reviewed its own tip pooling practices, or that it relied on the advice of counsel as to the lawfulness" of its actions as to its tip pooling practices); *see also Gortat*, 949 F. Supp. 2d at 381 ("The jury has returned a verdict of willfulness under the NYLL, therefore, named plaintiffs are entitled to 25% liquidated damages . . . .").

### v.   Plaintiffs can recover under the FLSA and the NYLL

Defendant contends that, if the Court decides to award liquidated damages, it should do so only under either the FLSA or the NYLL, but not both.  (Def. Damages Ltr. 1.)  Defendant notes the differing opinions by district courts on this issue.  (*Id.* at 1–2.)  Plaintiffs argue that the majority of the decisions in this Circuit have found that the liquidated damages provision in each

statute serves different purposes — the FLSA provision serves a compensatory purpose, while the NYLL provision has a punitive purpose, and therefore, the Court should award liquidated damages under both statutes. (Pl. Damages Ltr. 1–2.)

Consistent with the majority of the courts in this Circuit that have considered the issue, the Court finds that the liquidated damages provisions of the FLSA and the NYLL serve different purposes and therefore can be applied simultaneously. As the Second Circuit has made clear, liquidated damages under the FLSA are intended to be compensatory. *Herman,* 172 F.3d at 142. As pre-judgment interest is not allowed under the FLSA, liquidated damages under the FLSA are intended to act as a functional equivalent to pre-judgment interest and as such, are "not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman,* 172 F.3d at 142; *see also Reich*, 121 F.3d at 71. In contrast, liquidated damages under the NYLL are intended to be punitive. *Reilly*, 181 F.3d at 265 (Liquidated damages under the NYLL "constitute a penalty to deter an employer's willful withholding of wages due." (internal citations and quotation marks omitted)). The NYLL only allows for liquidated damages if the violation of the statute is found to be "willful," demonstrating the punitive intent of the application of liquidated damages under the NYLL. N.Y. Labor Law § 198; *Siemieniewicz*, 2012 WL 5183375, at *12. The Court therefore awards liquidated damages to Plaintiffs under both the FLSA and the NYLL.

### vi. Amounts owed to Plaintiffs

Griffin, Godwin and Callace began their employment with Defendant on July 27, 2008, May 23, 2010, and May 24, 2009, respectively. They commenced this action on April 14, 2011. Because the FLSA has a three-year statute of limitations for willful violations, 29 U.S.C. § 255,

Plaintiffs' entire work history with Defendant falls within the three year statutory period. Similarly, because the NYLL has a six-year statute of limitations for violations, N.Y. Labor Law § 198, each Plaintiff's entire work history is also covered under this statute. Therefore, each Plaintiff is entitled to 100% of his overtime wages as liquidated damages under the FLSA. In addition, each Plaintiff is entitled to twenty five percent of his overtime wages under the NYLL. Thus, the FLSA liquidated damages owed to Plaintiffs are $750.00, $385.00, and $3350.00 owed to Griffin, Godwin and Callace respectively. The NYLL liquidated damages owed to Plaintiffs are $187.50, $96.25, and $837.50, owed to Griffin, Godwin and Callace respectively. Combined with the overtime wages of $750.00, $385.00, and $3350.00 awarded to Plaintiffs respectively, the total amount of damages owed to Plaintiffs are $1687.50, $866.25, and $7537.50, to Griffin, Godwin and Callace respectively.

### b. Attorney's fees

The FLSA and the NYLL both authorize an award of reasonable attorneys' fees and costs to a prevailing plaintiff. 29 U.S.C. § 216(b); N.Y. Labor Law § 663(1). Plaintiffs filed a motion for attorneys' fees seeking $52,022.50. Defendant objects to the amount requested. Defendant argues that the amount should be reduced to account for the time Plaintiffs' counsel spent on the unsuccessful claims, that counsel's hourly rate is too high, and that the hours attributed to the paralegal should also be reduced. (Def. Fee Mem. 3–6.)

In deciding what fees are due to a plaintiff's attorneys, the Court must consider "what a reasonable client would be willing to pay to determine the 'presumptively reasonable fee.'" *Trs. of Local 813 Ins. Trust Fund v. Bradley Funeral Serv., Inc.*, No. 11-CV-2885, 2012 WL 3871759, at *5 (E.D.N.Y. Aug. 10, 2012), *report and recommendation adopted*, 2012 WL 3871755 (E.D.N.Y. Sept. 4, 2012); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n*

*v. Cnty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2007). To calculate the amount of a "presumptively reasonable fee," the court multiplies a reasonable hourly rate times the number of hours reasonably expended on the matter. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (explaining the "substance of" the traditional lodestar approach and a twelve-factor "reasonableness" approach to determining fees informed the "presumptively reasonable fee" test). When determining a whether the presumptively reasonable fee is ultimately reasonable, a court must "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorneys' fees . . . ."[5] *Simmons*, 575 F.3d at 174 (internal quotation marks and citation omitted). In what has become known as the "forum

---

[5] The Second Circuit has identified a number of variables to guide the inquiry as to what constitutes a reasonable fee, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Finkel v. Rico Elec., Inc.*, No. 11-CV-4232, 2012 WL 6569779, at *12–14 (E.D.N.Y. Oct. 1, 2012) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 187 n.3 (2d Cir. 2007)) (internal quotation marks omitted) *report and recommendation adopted*, No. 11-CV-4232, 2012 WL 6561270 (E.D.N.Y. Dec. 17, 2012). In addition, courts are also instructed to evaluate the complexity and difficulty of the case, the availability and expertise of the client's other counsel, the resources necessary to effectively litigate the case, the timing demands of the case, the attorney's interest in achieving the ends of the litigation and whether the attorney may have initially aced *pro bono*, and other returns the attorney may expect from representation. *Arbor Hill*, 522 F.3d at 184. While the traditional "lodestar" method, which does not consider the above factors, has "achieved dominance in the federal courts," courts in this Circuit continue to take the *Arbor Hill* factors into consideration when determining what constitutes a reasonable fee. *See Finkel*, 2012 WL 6569779, at *13. In any event, determining the "presumptively reasonable fee" and adjusting it based on the above factors produces the same result as applying the traditional "lodestar" analysis in this case.

rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Simmons*, 575 F.3d at 174–76 (discussing forum rule); *see also Bergerson v. N.Y.S. Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011).

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672, 2013 WL 5502951, at *7 (E.D.N.Y. Aug. 26, 2013) *report and recommendation adopted*, No. 07-CV-4672, 2013 WL 5502950 (E.D.N.Y. Sept. 30, 2013). To obtain an award of attorneys' fees, a plaintiff must provide contemporaneous time records which support the date work was performed, nature of the hours expended, and the work done. *See Scott v. City of New York*, 643 F.3d 56, 58–59 (2d. Cir. 2011); *Pilitz v. Inc. Vill. of Freeport*, No. 07-CV-4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) ("The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed . . . . Accordingly, the party seeking an award of attorney's fees must support its application by providing contemporaneous time records that detail 'for each attorney, the date, the hours expended, and the nature of the work done.'" (citing *Hensley v. Eckerhart*, 461 U.S. 424, 453 (1983) and *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007); quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 48 (2d Cir. 1983))).

### i. Hourly rates

Plaintiffs seek an award of attorneys' fees calculated at a rate of $400 per hour for their attorney who is a partner at his law firm and has "been the attorney of record in hundreds of labor and employment law matters" over the past twenty-seven years that he has practiced. (Pl.

Mem. in Supp. of Mot. for Att'y Fees ("Pl. Fee Mem.") 1, Docket Entry No. 72.) For their

attorney's rate, Plaintiffs note that in a similar case in the Eastern District of New York five

years ago, their attorney was awarded $350 per hour. *Aguilar v. E-Z Supply Corp.*, No. 06-CV-

6790, 2008 WL 905224, at *1 (E.D.N.Y. Mar. 31, 2008). Plaintiffs also cite to a number of

cases in support of their claim that $400 per hour is a reasonable rate for an experienced attorney

in the Eastern District of New York. *See Barella v. Vill. of Freeport*, No. 12-CV-0348, 2014 WL

1672364 at *50-51 (E.D.N.Y. Apr. 26, 2014) ($400 for attorney with eleven years' experience);

*Todaro v. Siegel Fenchel & Peddy, P.C.,* 697 F. Supp. 2d 395, 399 (E.D.N.Y. 2010) ($400 for

partner with seventeen years of employment discrimination litigation experience); *Luca v. Cnty.

of Nassau*, 689 F. Supp. 2d 296, 301-02 (E.D.N.Y. 2010) ($400 for attorney with twenty-five

years' experience).

The Court agrees that "[r]ecent opinions issued by courts within the Eastern District of

New York have found reasonable hourly rates to be approximately $300–$450 for partners,

$200–$325 for senior associates, and $100–$200 for junior associates." *See Pall Corp. v. 3M

Purification Inc.*, No. 97-CV-7599, 2012 WL 1979297, at *4 (E.D.N.Y. June 1, 2012) (citation

and internal quotation marks omitted) (collecting cases); *Cadles of Grassy Meadows II, L.L.C. v.

St. Clair*, No. 10-CV-1673, 2012 WL 6617448, at *2 (E.D.N.Y. Dec. 18, 2012) ("In the Eastern

District of New York, courts have determined reasonable hourly rates to be approximately $300–

[$]450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour

for junior associates." (internal quotation marks omitted) (collecting cases)); *see also Konits v.

Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011) (assessing the prevailing rates in the Eastern

District of New York). As a partner at a law firm with twenty-seven years of employment

litigation experience, the Court finds that $400 per hour is a reasonable rate for Plaintiffs'

attorney's services.[6]  In addition, the Court finds the $400 per hour rate to be reasonable based

upon the time, hours and effort required to litigate the case by counsel over the more than three

and a half years from the filing of the case to the jury verdict.  During the course of the litigation,

counsel was required to review several years of Defendant's corporate payroll and employee

time tracking records as to all three Plaintiffs, conduct an extensive deposition of Defendant's

CEO regarding his interactions with each of the three Plaintiffs as well as their work histories

spanning a number of years, and engage in motion practice requiring him to file several briefs

with the Court.

Plaintiffs also seek $75 per hour for the services of the paralegal, who has been a

paralegal for their attorney for six years.  (Pl. Fee Mem. 3.)  The Court finds the rate of $75 per

hour for paralegal services of a paralegal with six years of experience in employment litigation to

be reasonable.  *See Mary Jo C. v. Dinapoli*, No. 09-CV-5635, 2014 WL 7334863, at *7

(E.D.N.Y. Dec. 18, 2014) ("In this district, the average hourly rate awarded to paralegals . . . is

seventy-five dollars ($75.00)."); *Guzman v. Joesons Auto Parts*, No. 11-CV-4543, 2013 WL

---

[6]  The Court rejects Defendant's argument that counsel's hourly rate should be reduced
because "$300 per hour is more similar to the prevailing rates in Suffolk County than the $400
per hour requested."  (Def. Fee Mem. 4).  As discussed above, the forum rule requires the Court
to evaluate the reasonableness of an attorney's hourly rate by comparing the request with the
prevailing rates charged by attorneys practicing in the district in which the court sits.  *See
Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–76 (2d Cir. 2009) (discussing the forum
rule).  Defendant cites no support for its contention that the county is the appropriate community
to assess when considering a reasonable hourly rate, rather than the entire district, and the Court
declines to depart from this well-settled practice.  *See Wells Fargo Bank, NA v. Konover*, No. 05-
CV-1924, 2014 WL 3908596, at *9 (D. Conn. Aug. 8, 2014) ("Furthermore, the 'locality' to
which the court should be looking is more appropriately encompassed by the entire district,
rather than simply [one city].");  *Stewart v. Barclay's Bus. Credit, Inc.*, 860 F. Supp. 150, 150
(S.D.N.Y. 1994) (rejecting similar argument, stating "our Court has traditionally applied the
hourly rates of New York City practitioners in these matters, recognizing that the relevant
community served is the entire [district], and if a lawyer chooses to live and work within that
district in a more salubrious place, or a cheaper one, that is his or her own personal choice")
*aff'd*, 54 F.3d 766 (2d Cir. 1995).

2898154, at *5 (E.D.N.Y. June 13, 2013) ("For paralegals, the presumptively reasonable hourly billing rate is $75.00."); *Ferrara v. Prof'l Pavers Corp.*, No. 11-CV-1433, 2013 WL 1212816, at *5 (E.D.N.Y. Mar. 23, 2013) ("Recently, reasonable hourly rates in this district have ranged from . . . $70–$100 for paralegals.").

### ii. Hours expended

Plaintiffs are seeking attorneys' fees for 121.2 hours billed by counsel and 33.3 hours billed by a paralegal. (Time Records, annexed to Lichten Decl. as Ex. A 1–2; Lichten Decl. Reply Decl. of Stuart Lichten in Supp. of Mot. for Att'y Fees ("Lichten Reply Decl.") ¶ 9, Docket Entry No. 79.) Defendant opposes the amount of hours requested by Plaintiffs, arguing that Plaintiffs did not subtract enough hours for their unsuccessful claims, that Plaintiffs' time records are incomplete and vague, and that time spent on jury selection and trial should be reduced because the successful claims could have been brought separately. (Def. Fee Mem. 3.)

Having reviewed the time records submitted by Plaintiffs, which detail the tasks associated with the case that Plaintiffs' attorney completed, the date on which each task was completed and the amount of time that it took, the Court is satisfied that they sufficiently document the number of hours billed by both the attorney and paralegal. (Time Records, annexed to Lichten Reply Decl. as Ex. B.) Counsel notes that he removed "over fifty-five hours of time spent on Plaintiff's unsuccessful claims, including dozens of hours spent on summary judgment motions and other research,"[7] referring to Plaintiffs' unsuccessful minimum wage, racial discrimination and felony conviction discrimination claims. (Pl. Fee Mem. 3.) Plaintiffs'

---

[7] In Plaintiffs' reply memorandum in support of their motion for attorneys' fees, they adjust the subtraction of hours for time spent on the unsuccessful claims from 55 hours to 54.2 hours and submit the contemporaneous billing records for the subtracted time which supports the 54.2 hour figure. (Lichten Reply Decl. ¶¶ 7, 9; Time Records, annexed to Lichten Reply Decl. as Ex. B.) Based upon these time sheets, the Court will use the 54.2 hour subtraction in its calculations.

attorney also submitted the hourly billing sheets for the time spent on the unsuccessful claims for which he is not requesting payment. (Lichten Reply Decl. ¶ 7; Time Records, annexed to Lichten Reply Decl. as Ex. B.)

Defendant opposes the amount of hours. Defendant argues that because "recovery was based on unpaid overtime, which comprised only a small portion of the damages," Plaintiffs' fee application "for approximately two-thirds of the total time expended on behalf of all of Plaintiffs' claims" has not been sufficiently reduced to account for the time spent on unsuccessful matters. (Def Fee Mem. 3.) Defendant also argues that Plaintiffs' time entries are "incomplete and vague," and that the "contemporaneous time records should be sufficiently detailed to permit the court to determine whether an entire entry should be compensable because it is related to the successful claims." (*Id.* at 4.) Defendant further argues that the time spent at trial and on jury selection should be reduced because the successful claim could have been "brought in a separate trial." (*Id.* at 6.) Defendant concludes that due to the vague time entries, proportionality of fee recovery should be used "where the recovery involves only a small portion of the unrelated claims, most of which were unsuccessful." (*Id.* at 5.)

The Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.'" *Barbour v. City of White Plains,* 700 F.3d 631, 635 (2d Cir. 2012) (quoting *Kassim v. City of Schenectady,* 415 F.3d 246, 252 (2d Cir. 2005)); *see also Torres v. Gristede's,* 519 F. App'x 1, 5 (2d Cir. 2013) ("[T]he proportionality of the $3.42 million fee award is not to be judged, as Gristede's urges, against the dollar value of the $3.53 million settlement"). Where, however, the successful claims are wholly unrelated to the unsuccessful claims, a court can reduce the fees. *See Khan v. HIP Centralized Lab. Servs., Inc.*, No. 03-CV- 2411, 2009 WL 2259643, at *2

(E.D.N.Y. July 29, 2009) ("[T]he fees should be adjusted downward where 'counsel's work on [unsuccessful] claim[s is] unrelated' to work on the successful claims . . . second, to the extent that counsel's work cannot be neatly divided between claims, the fee may [be] reduced based on the 'degree of success obtained'" (citing *Hensley,* 461 U.S. at 436.)).  However, a court need not reduce a fee award where "the successful and unsuccessful claims were interrelated and required essentially the same proof."  *Murphy v. Lynn,* 118 F.3d 938, 952 (2d Cir. 1997); *see Hensley*, 461 U.S. at 433 ("unrelated claims are unlikely to arise with great frequency . . . much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."); *Green v. Torres,* 361 F.3d 96, 98 (2d Cir. 2004) ("Nor is the Court required to reduce the fee award because certain of the Plaintiff's claims were unsuccessful.  Indeed, courts need not reduce a fee award where the 'successful and the unsuccessful claims were interrelated and required essentially the same proof . . . As a general matter, unrelated claims are unlikely to arise with great frequency.'"); *Barrella v. Vill. of Freeport*, No. 12-CV-0348, 2014 WL 4273339, at *192 (E.D.N.Y. Aug. 28, 2014) *stay granted, order supplemented*, No. 12-CV-0348, 2014 WL 5471055 (E.D.N.Y. Oct. 29, 2014) (declining to reduce the fee award because plaintiff unsuccessfully pursued certain claims because both successful and unsuccessful claims arose "from the same core set of facts").  Further, the "party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified."  *Khan*, 2009 WL 2259643, at *2 (citing *U.S. Football League v. Nat'l Football League,* 887 F.2d 408, 413 (2d Cir. 1989)).

Here, the facts relevant to the successful claim, overtime wages, are similar to many of the facts of the unsuccessful claims presented at trial, minimum wage, and race discrimination in

the workplace and discrimination based on criminal history as to Plaintiffs Griffin and Godwin. All of the claims arise from Plaintiffs' employment at Defendant's moving company, all required depositions as to interactions and conversations between Plaintiffs and Defendant's staff and the overtime and minimum wage claims both required descriptions of the hours Plaintiffs worked and how those hours were tracked. The Court is satisfied that a reduction of 54.2 hours from the overall number of hours billed by Plaintiffs' attorney adequately accounts for time spent on the unsuccessful claims and that the remaining 121.2 hours billed is a reasonable figure for this matter, which has been ongoing for over three years.

Defendant also argues that the 33.3 hours billed by the paralegal and supported by time sheets, is too high because "the paralegal does not appear to have been involved in the case, or at least the portion of the case that relates to the successful claim." Defendant also argues that the paralegal "sat quietly in the rear of the courtroom and provided no visible services." (Def. Fee Mem. 6.) Plaintiffs have submitted an affidavit from the paralegal explaining the work that she did on the case. (Decl. of Janice Kelley in Supp. of Pl. Mot. for Att'y Fees ("Kelly Decl."), Docket Entry No. 78). According to her affidavit, during the course of the case she "performed much work, including but not limited to preparation of the exhibit binders, the creation of damages charts, and the organization of documents," and during the trial, she "organized, created, copied and maintained documents and exhibits, met and communicated with [P]laintiffs and witnesses, facilitated legal research and offered tactical advice." (*Id.* ¶ 7) She also states in her affidavit that she attended the trial daily, but at some points worked on the case outside of the courtroom where Defendant would not have been able to observe all of the work that she completed. (*Id.*)

The Court is satisfied that the time sheets submitted for the paralegal accurately reflect the hours worked on the matter, and finds that 33.3 hours is a reasonable number of hours for the paralegal to have billed. Defendant's observations that the paralegal appeared to not contribute during trial are unsubstantiated and the Court does not find them convincing.

### iii. Costs

Plaintiff seeks reimbursement for costs and disbursements related to the case. Plaintiffs request reimbursement in the amounts of $350.00 for filing fees, $55.00 for process service fees, $594.75 for court reporter fees, and $14.50 and $30.75 respectively for travel to the courthouse, totaling $1045.00. Expenses for these types of costs are reimbursable. *See Friedman v. Sharinn & Lipshie, P.C.*, No. 12-CV-3452, 2013 WL 1873302, at *12 (E.D.N.Y. Mar. 28, 2013) (awarding $436.24 in costs for filing fees, service of process fees, photocopying, postage, and facsimiles); *Cordero v. The Collection Co., Inc.*, No. 10-CV-5960, 2012 WL 1118210, at *3 (E.D.N.Y. Apr. 3, 2012) (awarding $410.00 for filing and service of process fees). Defendant does not oppose or challenge these costs. (Def. Fee Mem. 6.) The Court grants Plaintiffs' costs request in the amount of $1045.00.

The Court determines based upon multiplying the reasonable attorney rate of $400 per hour by the 121.2 hours worked after the deduction of 54.2 hours devoted to the unsuccessful claims, the total owed for Plaintiffs' attorney's work is $48,480.00 and multiplying the reasonable paralegal rate of $75 per hour by the 33.3 hours worked, the total owed for the paralegal's work is $2497.50. Plaintiffs' disbursements for this case amount to $1045. In total, the Court awards Plaintiffs' reasonable fees in the amount of $52,022.50.

### III. Conclusion

Consistent with the jury's verdict, the Court finds that Defendant owes Plaintiffs damages in the amounts of $1687.50 to Griffin, $866.25 to Godwin, and $7537.50 to Callace. The Court also grants Plaintiffs' application for attorneys' fees in the total amount of $52,022.50. The Court directs the Clerk to enter judgment accordingly.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2015
      Brooklyn, New York