UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

TRATHONY GRIFFIN and MICHAEL
GODWIN,

                      Plaintiffs,

        v.

SIRVA, INC., and ALLIED VAN LINES,
INC.,

                     Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
11-CV-1844 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Trathony Griffin and Michael Godwin commenced the above-captioned action

against Defendants Sirva, Inc. ("Sirva"), Allied Van Lines, Inc., ("Allied"), and former defendant

Astro and Storage Company ("Astro"), alleging violations of 42 U.S.C. § 1981, the Fair Labor

Standards Act, the New York State Human Rights Law, N.Y. Exec. Law § 296(15) ("NYSHRL"),

and the New York Labor Law.[1]  (Compl., Docket Entry No. 1.)  On November 19, 2012,

Plaintiffs moved for partial summary judgment against all Defendants on their NYSHRL claims

of discrimination based on their criminal history.  (Pls. First Mot. for Summ. J. ("Pls. First

Mot."), Docket Entry No. 30.)  Defendants Allied and Sirva cross-moved for summary judgment

on Plaintiffs' NYSHRL claims, the only causes of action asserted against them.  (Defs. First Mot.

for Summ. J. ("Defs. First Mot."), Docket Entry No. 27.)  By Memorandum and Order dated

May 29, 2014 ("May 29, 2014 Decision"), the Court denied Plaintiffs' motion for partial

summary judgment and granted Defendants' cross-motion.  *Griffin v. Sirva, Inc.*, No. 11-CV-

---

[1]  A third plaintiff, Frank Callace also asserted claims against Astro under the Fair Labor
Standards Act but never asserted a claim for discrimination under the NYSHRL.

1844, 2014 WL 2434196 (E.D.N.Y. May 29, 2014). Plaintiffs appealed and the Second Circuit certified three questions concerning New York state law to the New York Court of Appeals. *Griffin v. Sirva Inc.*, 835 F.3d 283 (2d Cir. 2016). Following certification, the New York Court of Appeals issued a decision resolving the three questions. *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174 (2017). Accordingly, the Second Circuit vacated and remanded the May 29, 2014 Decision to the extent it conflicts with the New York Court of Appeals' decision. *Griffin v. Sirva Inc.*, 858 F.3d 69, 71 (2d Cir. 2017).

The parties renewed their respective motions for summary judgment after remand. (Pls. Second Mot. for Summ. J. and Opp'n to Defs. Mot. for Summ J. ("Pls. Second Mot."), Docket Entry No. 98; Defs. Second Mot. for Summ. J. ("Defs. Second Mot."), Docket Entry No. 97; Defs. Mem. in Supp. of Defs. Second Mot. ("Defs. Second Mem."), Docket Entry No. 98.) For the reasons discussed below, the Court denies Plaintiffs' partial summary judgment motion and grants Defendants' cross-motion for summary judgment.

## I. Background

The Court assumes familiarity with the underlying facts as detailed in the May 29, 2014 Decision and provides only a summary of the pertinent facts and procedural background. *See Griffin*, 2014 WL 2434196.

### a. Factual background

#### i. Defendants and the Certified Labor Program

Sirva is a holding company of Sirva Worldwide, Inc. ("Sirva Worldwide"), Sirva Worldwide is the parent company of North American Van Lines, Inc. ("Van Lines"), and Van Lines is the parent company of Allied. (Defs. Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs. 56.1") ¶ 1, Docket Entry No. 97-1.) Allied is a motor carrier company authorized by the Department of Transportation to "transport household goods and high-value

commodities in interstate commerce." (*Id.* ¶ 3.) Allied provides interstate moving services to the general public through its "disclosed household goods agents throughout the United States." (*Id.* ¶ 4.)

Astro "provides local warehouse services and transportation services under its own authority from the New York State Department of Transportation." (*Id.* ¶ 5.) Pursuant to an agency contract ("Agency Contract") between Allied and Astro, Astro acts as one of Allied's "household goods agents" in New York with respect to Allied's interstate transportation and related services. (*Id.* ¶ 32.) "Household goods agents" are defined in 49 C.F.R. § 375.14 to include "agents who are permitted or required under the terms of any agreement or arrangement with a principal carrier to provide any transportation service for or on behalf of the principal carrier, including the selling of or arranging for any transportation service . . . . " 49 C.F.R. § 375.14.

Under the Agency Contract, Astro is required to comply with, *inter alia*, Allied's "Certified Labor Program" ("Labor Program"). Established in 2006, the Labor Program requires Astro, and other agents, to ensure all of their contractors and employees participating in Allied's interstate moving jobs to have successfully completed a criminal background check. (Stuart Lichten Decl. in Supp. of Pls. First Mot. ("Lichten Decl.") 25, Docket Entry No. 38.) The Labor Program grants Allied "sole authority and responsibility to establish and determine the consent process, adjudication standards, and documentation criteria for both certification of individuals and alternative vendors."[2] (*Id.*) Agents that fail to comply with the Labor Program face fines

---

[2] The Agency Contract provides that agents nonetheless "may propose . . . any amendments, supplements, modifications, or rescissions to [any] rules and regulations" and are otherwise required to comply with "all laws, orders and regulations of competent governmental authority." (Agency Contract, annexed to Defs. First Mot. as Exhibit D, Docket Entry No. 27-5.)

and potential liability.  (*Id.*)

In applying the Labor Program, Allied also maintains adjudication guidelines ("Adjudication Guidelines") used to determine the eligibility of agents' contractors and employees to participate in its interstate services.  (Adjudication Guidelines ("AG"), annexed to Defs. First Mot. as Ex. G., Docket Entry No. 27-6.)  Under the Adjudication Guidelines, an applicant's "felony conviction for any (A) sexual offense; (B) kidnapping; (C) death related offenses; (D) attempted murder; (E) assault with a deadly weapon; (F) assault with intent to kill or (G) armed robbery, mandates the applicant's permanent disqualification from any jobs performed by a disclosed household goods agent under [Allied's] interstate authority."  (Defs. 56.1 ¶ 49; AG.)  If an individual is not qualified, an agent may continue employing the disqualified individual in the agent's own moving business under the agent's own operating authority, but the individual may not be used on Allied's interstate business.  (Defs. 56.1 ¶ 74.)  Astro is also free to hire anyone, regardless of criminal background, for its own intrastate moving services.  (*Id.* ¶ 51.)

### ii.  Plaintiffs and the application of the Labor Program

Griffin began working for Astro in August 2008, and, through a referral by Griffin, Godwin began working for Astro in May of 2010.  (*Id.* ¶ 29.)  Both worked as "helpers," which required them to pack household goods for transportation and move the goods into and out of the homes of Astro's customers.  (*Id.* ¶ 30.)

Even though the Labor Program was established in 2006, according to Keith Verderber, Astro's Chief Executive Officer, Allied started asking Astro to conduct background checks on individuals working on Allied shipments in 2008–2009, and thereafter, Astro "needed to get [its employees] cleared to go on the particular jobs."  (*Id.* ¶ 75.)  On February 8, 2011, Griffin

completed the background investigation consent form.  (*Id.* ¶ 77.)  Godwin also completed a background investigation consent form, in which he admitted to having a rape conviction in November of 1998.  (*Id.* ¶¶ 78–79.)  Background checks on Griffin and Godwin disclosed that both had convictions for violent sexual offenses against young children, are registered sex offenders and remain under supervision.  (*Id.* ¶ 81.)

According to Griffin, Astro terminated his employment a day or two after he completed the background investigation consent form.  (*Id.* ¶ 82.)  Verderber stated otherwise and explained Griffin was not terminated and chose to leave after being informed that he "could only go on limited jobs such as a commercial job which is not household goods, not going in somebody's home," but that work was limited because Astro did not "have much of it."  (*Id.* ¶ 88.)

Godwin also failed his background check, and, as a result, Astro terminated his employment.  (*Id.* ¶ 91.)  Astro advised Godwin that, based on his criminal record, Astro could not allow him to enter customers' homes.  (*Id*. ¶ 92.)  According to Verderber, Godwin was not offered the same opportunity as Griffin to explain his failed background check or to continue to work for Astro.  (*Id.* ¶ 93.)  Verderber responded differently to Griffin and Godwin's failed background checks because he "had a longer relationship" with Griffin, but he felt he "couldn't do anything else with" Godwin.  (*Id.* ¶ 94.)  Verderber determined that Godwin could not have worked on any non-Allied shipments due to liability concerns.  (*Id.* ¶ 95.)

### b.  Procedural background

In the May 29, 2014 Decision, the Court denied Plaintiffs' motion for partial summary judgment and granted Defendants' cross-motion for summary judgment.  The Court held that

Allied and Sirva were not Plaintiffs' employers and therefore were not liable under 296(15).[3]

*See Griffin*, 2014 WL 2434196, at *11. The Court also found that Allied and Sirva were not "joint employers"[4] and, as a result, could not be subject to "aider and abettor" liability under section 296(6).[5] *Id.* at *12.

---

[3] The NYSHRL "limits the ability of employers to make employment decisions adverse to employees or job applicants on the basis of criminal history" and "provides protection even after conviction, based on a public policy of welcoming those formerly convicted back into the labor force." *Smith v. Bank of Am. Corp.*, 865 F. Supp. 2d 298, 302–03 (E.D.N.Y. 2012). The statute provides, in pertinent part:

> It shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association . . . to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of "good moral character" which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-A of the correction law.

N.Y. Exec. Law § 296(15).

[4] While dismissing the aiding and abetting claim based on the joint employer doctrine, the Court *in dicta* also explained that the evidence did not support finding Allied and Sirva liable even if section 296(6) extended liability to persons and entities beyond joint employers. *Griffin v. Sirva, Inc.*, No. 11-CV-1844, 2014 WL 2434196, at *13 (E.D.N.Y. May 29, 2014). The Court explained that Allied and Sirva "at most, . . . were responsible for, or caused, a change in [Plaintiffs'] job responsibilities" because Astro made "separate employment decisions" based on:

> (1) the practical reality that any individual who could not work on Allied projects would not be able to work on 70-80% of Astro's projects, and (2) Astro's own determination that it was not safe or wise to send convicted sex offender's into people's homes, where they could be left alone unsupervised.

*Id.* Following the New York Court of Appeals certification, the Court questions the continued viability of the first basis. As the New York Court of Appeals opinion explained, section 296(6) is designed in part to "furnish protection to all persons, whether employers, labor organizations, or employment agencies, who find themselves subjected from any source to compulsion or coercion to adopt any forbidden employment practices." *See Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187 (2017).

[5] The Court uses "aider and abettor" liability as inclusive of aiding, abetting, inciting, compelling, or coercing unlawful discriminatory practices under section 296(6). *See* N.Y. Exec. Law § 296(6) (prohibiting any person from "aid[ing], abet[ting], incit[ing] compel[ing], or

The Court conducted a jury trial on Plaintiffs' claims against Astro beginning with jury selection on November 17, 2014. (Minute Entries dated November 17, 2014 through November 21, 2014.) After three days of trial and deliberations, the jury found that Astro did not unlawfully discriminate against Plaintiffs within the meaning of section 296(15). (*See* Verdict Sheet 5, Docket Entry No. 70.)

Plaintiffs appealed the summary judgment decision dismissing the claims against Defendants to the Second Circuit but did not appeal the jury verdict. *See Griffin*, 835 F.3d at 284. Because the appeal involved several unresolved questions of New York law, the Second Circuit certified the following three questions to the New York Court of Appeals regarding who may be liable under the NYSHRL:

> *First*, does Section 296(15) limit liability for unlawful denial of employment only to the aggrieved party's "employer"? *Second*, if Section 296(15) is limited in that way, how should courts determine whether an entity is the aggrieved party's "employer" for the purposes of a claim under Section 296(15)? *Third*, does the "aiding and abetting" liability provision of the NYSHRL, Section 296(6), apply to Section 296(15) such that a non-employer may be liable under Section 296(15) as an aider and abettor of an employer's unlawful denial of employment?

*Id.* at 285. The New York Court of Appeals answered in the affirmative as to the first question and as to the second question explained that an employer under section 296(15) is to be defined in accordance with common-law principles, "with greatest emphasis placed on the alleged employer's power "to order and control" the employee in his or her performance of work." *Griffin*, 29 N.Y.3d at 184, 186. As to the third question, the New York Court of Appeals construed section 296(6) liability broadly to cover "persons and entities beyond joint

---

coerc[ing]" other unlawful discriminatory practices). Plaintiffs' "aider and abettor" claim is based on the theory that Defendants compelled or coerced Astro to unlawfully terminate Plaintiffs. (Pls. Second Mot. for Summ. J. and Opp'n to Defs. Mot. for Summ J. ("Pls. Second Mot.") 11, Docket Entry No. 98.)

employers," including out-of-state defendants. *Id.* at 187. The Second Circuit subsequently vacated and remanded the case back to this Court to the extent the prior order conflicted with the New York Court of Appeals opinion. *See Griffin*, 858 F.3d at 71.

Following remand, the Court reopened the parties' respective summary judgment motions and allowed the parties to submit additional briefing. (Order dated August 2, 2017.) Plaintiffs now move for summary judgment against Defendants for compelling or coercing and attempting to compel or coerce unlawful discrimination pursuant to section 296(6). (Pls. Second Mot. 1.) Defendants cross-move for summary judgment as to both claims. (Defs. Second Mot. 1.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational

juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Plaintiffs fail to establish aider and abettor liability

Plaintiffs makes three arguments in support of their claim that Defendants aided and abetted their termination in violation of NYSHRL section 296(15). First, Plaintiffs argue that the "verdict [finding Astro "not liable" under section 296(15)] d[oes] not necessarily mean that the jury found no [NYSHRL] violation" "because the jury believed that Astro was compelled by [D]efendants to discharge Plaintiffs." (Pls. Second Mot. 6.) Second, Plaintiffs argue that a trial against Defendants will raise issues unresolved by the jury verdict as to Astro and, therefore, collateral estoppel is inappropriate. (*Id.*) Lastly, Plaintiffs argue that, because Defendants are corporations and not individuals, the case law requiring an underlying violation in order to find aider and abettor liability is inapposite. (*Id.* at 10.)

As explained below, the Court dismisses Plaintiffs' aider and abettor claim because (1) Plaintiffs are collaterally estopped from relitigating the issue of a primary violation because a jury has already found that Astro did not take any discriminatory actions in violation of section 296(15), and (2) without a primary violation by Astro, Defendants cannot be liable as aiders and abettors under section 296(6).

### i. Plaintiffs are collaterally estopped from arguing that Astro violated the NYSHRL

Collateral estoppel bars relitigation of the jury's finding that Astro did not unlawfully terminate Plaintiffs in violation of the NYSHRL.

"Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a

prior proceeding, regardless of whether the two suits are based on the same cause of action."[6]
*Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003); *LeBlanc-Sternberg v. Fletcher*, 67
F.3d 412, 433 (2d Cir. 1995) (concluding the "jury's findings on plaintiffs' legal claims
constituted collateral estoppel, preventing the court from making contrary findings as the
factfinder with respect to the private plaintiffs' equitable claims"); *Brown v. City of New York*,
No. 14-CV-2668, 2014 WL 5394962, at *4 (S.D.N.Y. Oct. 23, 2014) (holding jury verdict to be a
final judgment on the merits for *res judicata* purposes).

Plaintiffs, represented by the same counsel throughout the litigation before the Court and
appeal before the Second Circuit, had a full and fair opportunity to present their case to the jury
that Astro unlawfully terminated their employment in violation of section 296(15). After three
days of trial and deliberations, the jury found in favor of Astro, concluding that Plaintiffs had
failed to prove by a preponderance of evidence that Astro unlawfully terminated their
employment because of their prior criminal convictions. (*See* Verdict Sheet 5 (marking "No" in
response to the question "Have Plaintiffs proven by a preponderance of the evidence that [Astro]
unlawfully terminated their employment because of their prior criminal conviction?").) The
Court directed the clerk to enter judgment on March 31, 2015 and Plaintiffs declined to appeal
the jury verdict, *see Griffin v. Astro Moving & Storage Co. Inc.*, No. 11-CV-1844, 2015 WL
1476415, at *12 (E.D.N.Y. Mar. 31, 2015), and instead appealed only the decision granting

---

[6] Although only New York State causes of action remain, the Court originally obtained
jurisdiction through federal causes of action and the exercise of supplemental jurisdiction. (*See*
Compl. 1–2.) In addition, the proceedings against Astro proceeded on such basis. Therefore,
federal collateral estoppel rule should likely apply. *See Blonder-Tongue Labs., Inc. v. Univ. of
Illinois Found.*, 402 U.S. 313, 324 n.12 (1971) ("This Court has noted, 'It has been held in non-
diversity cases since *Erie R. Co. v. Tompkins*, that the federal courts will apply their own rule of
res judicata.'" (citation omitted)). However, the Court finds it unnecessary to decide this issue
because "there is no discernible difference between federal and New York law concerning . . .
collateral estoppel." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

summary judgment to Defendants.

Plaintiffs' argument that the jury verdict does not mean that the jury found "no [NYCHRL] violation" is an unconvincing attempt to discredit or limit the scope of the jury verdict. According to Plaintiffs, "the jury found Astro not liable because the jury believed that Astro was compelled by [D]efendants to discharge [P]laintiffs." (Pls. Second Mot. 6.) Plaintiffs thus argue that the "verdict did not necessarily mean that the jury found no Human Rights Law violation." (*Id.*)

The trial record does not support Plaintiffs' arguments. During closing arguments, Plaintiffs' counsel informed the jury that Astro could not rely on the defense that its actions were at the direction of Defendant Allied if the request itself was unlawful. (*See* November 20, 2014 Tr. 52:1–4 ("[I]f that other company wants [Astro] to break the law, [Astro] can't just go ahead and do what they want. [Astro] can't break the law and say, they told me to do it. [Astro] ha[s] to be responsible for what [Astro] did.").) In addition, the Court twice instructed the jury: "Requirements, preferences, or attitudes of [Astro's] clients, customers, or principals such as [Defendants] Allied Van Lines or Sirva, Inc. are not relevant to your determination of whether or not [Astro] complied with its obligations under the statute."[7] (*Id.* 109:19–23; November 21,

---

[7] During jury deliberations, the jury submitted a note to the Court asking when Astro had become affiliated with Defendant Allied. (Trial Tr. 130:2–7, Docket Entry No. 86.) In response to the jury's question, the Court explained to the jury that "[i]f what [they] wanted is any testimony about any affiliation, [the Court could] send that back to [them]." *Id.* Based on this exchange, Plaintiffs now make the specious claim that during the trial, "[t]he Court . . . implied that there was . . . an affiliation" between Defendants and Astro, causing the jury to find for Astro due to the belief the Defendants were the "culpable parties." (Pls. Second Mot. 8.) As Plaintiffs recognize, the Court was merely reading back to the jury their question and informing them they could rehear testimony on the issue. (*See id.* ("If what you want is any testimony about any affiliation, I can read that back to you . . . .").) To characterize the Court's recitation of the jury's question as implying *anything* is disingenuous. Further, as discussed above, *supra* 11–12, the Court twice instructed the jury that Astro could not rely on the defense that Defendants directed its actions.

2014 Tr. 140:6–10.) Plaintiffs' unsubstantiated speculation as to the reasons behind the jury's decision is insufficient to impugn the jury verdict. *See U.S. ex rel. Rogers v. LaVallee*, 517 F.2d 1330, 1335 (2d Cir. 1975) (explaining "courts have been unwilling to upset allegedly [even] 'inconsistent' jury verdicts by speculation as to whether they might have been the result of compromise or mistake"); *Koch v. Consolidated Edison Co.*, 62 N.Y.2d 548, 557 (1984) (holding that a party could not defeat issue preclusion by arguments "grounded only in speculation" that the verdict was the result of impermissible compromise) *cert. denied,* 469 U.S. 1210 (1985); *see also Manufacturers Hanover Tr. Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 27 (2d Cir. 1986) ("Juries are presumed to follow instructions." (citations omitted)).

Despite Plaintiffs' feeble attempts to "read into" or undermine the verdict, the jury found that Astro did not unlawfully terminate Plaintiffs' employment in violation of section 296(15) and Plaintiffs are barred from relitigating that issue. *See Lipin v. Hunt*, No. 14–CV–1081, 2015 WL 1344406, at *5 (S.D.N.Y. Mar. 20, 2015) ("The doctrine of non-mutual defensive collateral estoppel 'precludes a plaintiff from relitigating identical issues by merely switching adversaries.'" (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)); *Schwartz v. Pub. Adm'r of Bronx Cty.*, 24 N.Y.2d 65, 70 (1969) ("[I]n a long series of cases . . . we have permitted a defensive use of collateral estoppel so long as there was an identity of issues, and the party against whom the estoppel was being asserted had a full opportunity to contest the issue.").

Plaintiffs' argument that there may be *new, additional* questions posed in a trial against Defendants is a red herring on the issue of collateral estoppel. Plaintiffs assert that "[t]he question before the Astro jury was, "Have [P]laintiffs proven by a preponderance of evidence that [Astro] unlawfully terminated their employment because of their prior criminal conviction?" (Pls. Second Mot. 6.) In contrast, Plaintiffs assert that the question at the second trial would be,

"Have [P]laintiffs proven by a preponderance of the evidence that [Defendants] aided, abetted, incited, compelled, or coerced, or attempted[8] to aid, abet, incite, compel or coerce, the doing of any of the acts forbidden under the Human Rights Law?" (*Id.*) However, as discussed *infra*, one of the necessary elements of an aider and abettor claim is a primary violation, and here a jury has already determined there is none — a conclusion that Plaintiffs are collaterally estopped from relitigating. Even though a second trial would involve Defendants who were not parties to the first trial, and new issues not raised in the first trial, Plaintiffs' aider and abettor claim nevertheless fails because a jury has already found Astro not liable for discrimination under section 296(15).[9]

### ii. Plaintiffs' aider and abettor claim fails because there is no primary violation

In order for a defendant to be liable as an aider and abettor under section 296(6), a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal. *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 314 (2004); *Kelly G. v. Bd. of Educ. of City of Yonkers*, 952 N.Y.S.2d 229 (2012); *Strauss v. New York State Dep't of Educ.*, 805 N.Y.S.2d 704, 709 (2005); *Baldwin v. Bank of Am., N.A.*, 984 N.Y.S.2d 630, 2013 WL 6724587 (Sup. Ct. 2013); *see also Benson v. Otis Elevator Co.*, 557 F. App'x 74, 77 (2d Cir. 2014); *Falbaum v. Pomerantz*, 19 F. App'x 10, 15 (2d Cir. 2001); *Mereigh v. New York & Presbyterian Hosp.*, No. 16-CV-5583, 2017 WL 5195236, at *7 (S.D.N.Y. Nov. 9, 2017); *Irons v.*

---

[8] As discussed *infra* in part (c), the Court declines to address Plaintiffs' new "attempt" claim raised for the first time in opposition to Defendants' renewed motion for summary judgment.

[9] In renewing their motion for summary judgment, Plaintiffs only asserted claims based on section 296(6). (*See* Pls. Second Mot. 6–11, 16–17.) Plaintiffs did not seek to reargue whether Defendants were employers under section 296(15) within the new parameters provided by the New York Court of Appeals. (*Id.*)

*Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-CV-4467, 2015 WL 5692860, at *32 (E.D.N.Y. Sept. 28, 2015); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 378 (S.D.N.Y. 2013).

This principle applies even when the defendants are corporate entities. *See Baldwin*, 2013 WL 6724587, at *5 ("[I]n the 'corporate' context where there is no 'employer coemployee,' charting the course between limited direct liability and appropriate aiding-and-abetting liability is likely to be fact-intensive as to the nature of intra-corporate relationships, and to depend upon judgments about their significance." (internal citation omitted)); *see also Francis v. Kings Park Manor, Inc.*, 91 F. Supp. 3d 420, 434 (E.D.N.Y. 2015) ("Under [section] 296(6), an individual or [corporate] entity must 'actually participate[ ] in the *conduct giving rise to a discrimination claim*' to be held liable." (emphasis added)).

Plaintiffs provide no compelling reason for the Court to find otherwise. (*See* Pls. Second Mot. 10–11.) Instead, Plaintiffs assert that that "it makes sense" that "an individual serving as an officer or supervisor of corporate entity" would not be liable when the "corporation is exonerated." (*Id.* at 10.) However, Plaintiff does not provide any rationale for why the same reasoning would not apply when only corporate entities are involved. (*See id.* at 10–11.) Indeed, the reason section 296(6) requires a primary violation is intuitive — "[w]here there has been no discrimination, there is nothing to aid or abet." *Taylor v. R&M Mfg.*, No. 99-CV-1086, 2002 WL 187506, at *5 n.5 (D. Minn. Jan. 23, 2002) (addressing parallel aider and abettor claims under the Minnesota Human Rights Act ("MHRA")); *Daud v. Gold'n Plump Poultry, Inc.*, No. 06-CV-4013, 2007 WL 1621386, at *6 (D. Minn. May 11, 2007) (same), *report and recommendation adopted*, No. 06-CV-4013, 2007 WL 1674021 (D. Minn. June 5, 2007). This logic applies whether the alleged wrongdoer is an individual or a corporate entity. Whether the claims allege violations by an individual or a corporation, a party cannot be said to have aided, abetted,

coerced, or compelled another to unlawfully terminate an employee when the termination is lawful. *See Baldwin*, 2013 WL 6724587, at *5. At most, the involvement of a corporate entity raises "fact-intensive [questions] as to the nature of intra-corporate relationships." *Id.* Therefore, Plaintiffs cannot succeed on an aider and abettor theory against Defendants because a jury has already found no primary violation by Astro.

Plaintiffs rely on *Nat'l Org. for Women v. State Div. of Human Rights*, 34 N.Y.2d 416, (1974) ("*NOW*"), to argue that a primary violation is not required for an aider and abettor claim, especially in the corporate context — but their reliance is misplaced. *See id.* at 421; (Pls. Second Mot. 11.) In *NOW*, the New York Court of Appeals held a newspaper company liable for aiding and abetting sex discrimination under section 296(6) where employment advertisements were separated into captions reading "Help Wanted—Male" and "Help Wanted—Female." *See Now*, 34 N.Y.2d at 421. In finding the newspaper liable for listing the advertisements in separate male and female categories, the court explained that the listings reflected existing discrimination on the basis of sex because "discrimination against women permeates the salary structure with the result that jobs listed in the [defendant newspaper's] 'female' column are much lower paying than those listed in the 'male' column." *Id.* Having *assumed* the existence of predicate violations as evidenced by the lower salaries for women in the listings, the court did not find it necessary to "consider the issue of whether, separate from the newspaper company, any employer or prospective employer was liable for primary discrimination under the Human Rights Law."[10] *Griffin*, 29 N.Y.3d at 188; *NOW*, 34 N.Y.2d at 421 ("[Lower salaries for women], of

---

[10] *NOW* is best understood as standing for the proposition that plaintiffs do not need to pursue actions against direct employers if they are able to establish underlying discrimination even in the absence of the direct employer. Otherwise, *NOW* would conflict with the great weight of authority interpreting section 296(6) as requiring a primary violation. *See Irons v.*

course, is prohibited by section 296 of the Executive Law and those who aid or abet such

unlawful discrimination are also chargeable with an unlawful discriminatory practice ([section

296(6)].”).  Thus, *NOW* does not support the conclusion that a primary violation is unnecessary

for aider and abettor liability, even as to corporate defendants.

      The Court therefore grants Defendants summary judgment as to Plaintiffs’ aider and

abettor claim.

### c.  Plaintiffs’ attempt claim

      In their renewed motion for partial summary judgment, Plaintiffs for the first time assert a

claim for attempt to compel or coerce under section 296(6).  (Pls. Second Mot. 15–17.)  Plaintiffs

contend that their attempt claim is not new because they have always relied on the entire

provision of section 296(6), including a claim for attempts to compel or coerce.  (*Id.*)

Defendants disagree and argue that the statutory text of section 296(6) makes clear that attempt

claims are separate from the traditional aider and abettor claims and that Plaintiffs have only

pursued the latter.  (Defs. Reply in Supp. of Second Mot. for Summ. J. (“Defs. Reply”) 13,

Docket Entry No. 99.)  For the reasons discussed below, the Court declines to consider Plaintiffs’

new attempt claim.  The Court also finds that Plaintiffs fail to demonstrate good cause to add the

attempt claim even had they requested leave to amend the Complaint.

### i.  Statutory interpretation of “attempt” in section 296(6)

      Section 296(6) states: “It shall be an unlawful discriminatory practice for any person to

aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, *or to*

---

*Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-CV-4467, 2015 WL 5692860, at *32 (E.D.N.Y.
Sept. 28, 2015) (collecting cases).  Under this interpretation, Plaintiffs would need to prove Astro
committed a primary violation even if Astro is not joined in the new action.  However, a jury has
already found Astro not to have violated section 296(15) and Plaintiffs are collaterally estopped
from relitigating that issue.

*attempt to do so*." N.Y. Exec. Law § 296 (emphasis added).

No court has yet decided the significance of the phrase "or to attempt to do so" in section 296(6) or parallel statutes in other states. *See Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of New York, Inc.*, 79 N.Y.2d 227, 233 (1992) (declining to decide issue); *see also* Cal. Gov't Code § 12940(i) (parroting the language in N.Y. Exec. Law § 296(6)); N.J. Stat. Ann. § 10:5-12(e) (same). Under one interpretation, "attempt to do so" modifies "'aid, abet, incite, compel or coerce,' so that the law proscribes an attempt to incite, [compel or coerce] discrimination." *Jews for Jesus*, 79 N.Y.2d at 234. Under a competing interpretation, "attempt to do so" modifies "the immediately preceding clause — 'the doing of any of the acts forbidden under this article[]'" — "proscrib[ing] attempts to discriminate, not attempts to incite discrimination." *Id.* at 235. In *Jews for Jesus*, the New York Court of Appeals declined to endorse either interpretation. *Id.* at 233. Having "assume[d], without deciding," that the law proscribed attempts to incite discrimination — the plaintiffs' interpretation — the New York Court of Appeals concluded that the defendants' conduct did not violate the statute. *Id.*; *see also id.* at 235 ("In that the majority has no occasion to reach the statutory interpretation issue in this case, a patent ambiguity in the statute necessarily remains unresolved.") (Kaye J., concurring).

The Court finds the interpretation that section 296(6) prohibits attempts to aid, abet, incite, compel or coerce, rather than attempts to discriminate, more persuasive. This interpretation not only follows a more natural reading of statutory text but is also supported by legislative history. In enacting N.Y. Executive Law section 131(5), the predecessor to section 296(6), the legislature explained that the statute was designed to punish "employees who coerce *or attempt to coerce* an employer into unlawful employment practices." Report of the New York State Temporary Commission Against Discrimination, Legis. Doc. No. 6, at 31 (1945) (emphasis

added).  The *identical* language of sections 131(5) and 296(6) supports reading the legislative history consistently for both statutes.  *Compare* N.Y. Exec. Law § 131(5) *with* § 296(6).

In declining to resolve the issue in *Jews for Jesus*, the Court of Appeals appeared concerned that it might be an "anomaly" for the legislature to prohibit "attempts merely to aid, abet or incite discriminatory acts but not . . . attempt[s] to engage in discriminatory practices." *Jews for Jesus*, 79 N.Y.2d at 233; *id.* at 235 ([W]here the choice must be made between proscribing attempts to incite discrimination and proscribing attempts to discriminate, I would conclude as a matter of statutory interpretation that the Legislature chose the latter.") (Kaye J., concurring).  However, employers, the only parties likely in a position to attempt to discriminate, are already subject to liability for discrimination under section 296(15).  *See Griffin*, 29 N.Y.3d at 184.  By the very nature of their status, employers have great authority over their employees. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992).  With such authority, employers who *attempt* or choose to discriminate will almost assuredly be able to do so. Therefore, section 296(15) likely already serves as deterrence against both discrimination and attempts to discriminate.  Attempt liability in section 296(6) may therefore have been aptly limited, as stated in the legislative history, to specifically address those with less authority or control over existing or potential employees.

Despite the lack of clarity as to precisely which preceding words "attempt to do so" modifies, the New York Court of Appeals has distinguished between attempt liability and traditional aider and abettor liability under section 296(6).  *See Jews for Jesus*, 79 N.Y.2d at 228 ("Defendants . . . did not aid or abet, *or* attempt to aid or abet unlawful conduct [within the meaning of section 296(6)].  Nor did defendants' conduct rise to the level of incitement *or* an attempt to incite." (emphasis added)); *see also* Minn. Stat. Ann. § 363A.14(2) (expressly

separating out liability for "aid[ing], abet[ing], incit[ing], compel[ing], or coerc[ing]" from "attempt[ing] to aid, abet, incite, compel, or coerce" into two different subsections)).  Traditional principles of statutory interpretation also supports the conclusion that attempt liability is separate from traditional aider and abettor liability.  The use of "or" "is almost always disjunctive, that is, the words it connects are to be given separate meanings." *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014).  Therefore, there are *two* types of causes of action available under section 296(6) — aider and abettor liability and attempt liability.

### ii.  Plaintiff pleads a new, previously unasserted cause of action

In the July 7, 2011 Scheduling Order, the Court set a January 10, 2012 deadline for motions to amend the pleadings.[11]  (Scheduling Order, Docket Entry No. 8.)  Despite the Scheduling Order, Plaintiffs never moved to amend the Complaint.  Indeed, Plaintiffs failed to expressly identify section 296(6) as a basis for liability until their Opposition to Defendants' initial motion for summary judgment.  (*See* Compl.; Pls. First Opp'n to Defs. First Mot. ("Pls. First Opp'n") 9, Docket Entry No. 28.)  However, construing the Complaint broadly, and taking into consideration Plaintiffs' arguments made in their motion for partial summary judgment, the Court found that Plaintiffs had raised an "aiding and abetting" claim prior to their Opposition to Defendants' motion.  *Griffin*, 2014 WL 2434196, at *12 n.16.  As Plaintiffs aptly explained in their Opposition submission in response to Defendants' first motion for summary judgment, "[t]he critical inquiry [was] whether [D]efendants ha[d] denied employment to [Plaintiffs], or whether Sirva and Allied *compelled or coerced* Astro to dismiss [Plaintiffs]."  (Pls. First Opp'n 9 (emphasis added).)

Plaintiffs now maintain that they "always have invoked the entire provision" of section

---

[11]  Magistrate Judge William D. Hall entered the Scheduling Order when the case was assigned to Senior Judge Leonard D. Wexler.

296(6).  (Pls. Second Mot. 17.)  However, Plaintiffs themselves recognize that compelling or coercing unlawful discrimination is a separate claim from attempting to compel or coerce such action by separately addressing these actions in their renewed motion papers.  (*Id.* at 8 ("The issue in this case [is] whether SIRVA and Allied "aided and abetted" discrimination  . . . *Furthermore*, SIRVA and Allied could be found to have attempted, unsuccessfully, to compel Astro to discriminate." (emphasis added)).  Despite recognizing that section 296(6) provides for two different types of causes of action, Plaintiffs never pleaded any factual allegations supporting a claim that Defendants *attempted* to compel or coerce Astro to unlawfully terminate Plaintiffs in violation of 296(15).  *See also Aycock v. Bank of Am., N.A.*, No. 14-CV-2789, 2015 WL 3746997, at *5 (W.D. Tenn. May 28, 2015) ("[M]ere references to statutes, without an explanation of which factual allegations supposedly support a claim under the statutes, are not sufficient to state a cause of action."); *Hunter v. D.C.*, 534 F. Supp. 2d 70, 71 (D.D.C. 2008) ("[I]t is clear that mere references to statutes in a complaint without any allegations as to how these statutes were violated cannot meet even Rule 8's liberal requirement of 'a short and plain statement of the claim showing the pleader is entitled to relief.'" ).

   Plaintiffs also could have pleaded alternative, and even *inconsistent* claims, *see Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994), as they now seek to do.  Plaintiffs could have asserted, as they now do in their renewed summary judgment motion, that to the extent there was *no unlawful termination* under section 296(15), it was because "[Defendants] could be found to have attempted, *unsuccessfully*, to compel Astro to discriminate."[12]  (Pls. Second Mot. 8

---

[12]  Despite the assertion that there may have been an *unsuccessful* attempt to compel or coerce Astro to discriminate, Plaintiffs still argue in substance that Astro did in fact comply with the instructions of Defendants and that there was an underlying violation.  (*See id.* at 17 ("The basic allegation remains the same: [Defendants] Allied and SIRVA caused Astro to discharge

(emphasis added).)  Instead, in their Complaint and original summary judgments papers,

Plaintiffs maintained that Defendants "compelled or coerced Astro to dismiss [Plaintiffs]."  (Pls.

First Opp'n 9; Compl. ¶ 23 ("By their acts and practices described above, [Defendants, including

Astro] have violated Executive Law [section] 296(15).").)  Plaintiffs only now seek to pursue

this new attempt claim after a jury found Astro not liable under section 296(15).

For the reasons discussed above, the Court rejects Plaintiffs' argument that they have

always asserted an attempt claim.  Plaintiffs would have sought reconsideration or appeal of the

attempt claim if they actually believed the Court failed to consider an *entire cause of action*.

Notably, the Second Circuit did not certify the issue of attempt liability and the New York Court

of Appeals never considered it.

### iii.  Plaintiffs fail to show good cause under Rule 16(b)

Even if the Court were to construe the new attempt claim as a request to amend the

---

[P]laintiffs in violation of the Human Rights Law . . . Plaintiffs were fired because [D]efendants forbade Astro from employing them on 80 percent of its assignments.").)  But as discussed above in the aider and abettor section, even if Defendants' policies are inconsistent with NYSHRL, the jury has already concluded that Plaintiffs were not unlawfully terminated.  In addition, if Defendants *failed* in their alleged attempts to coerce or compel Astro to discriminate, the inference that naturally follows is that Plaintiffs were lawfully terminated.  Plaintiffs cannot be said to have suffered any cognizable injury if they were lawfully terminated.

Furthermore, where, as here, there is no underlying discrimination (based on the jury verdict), the claimant would also generally appear to be the *employer* rather than the employee — the party that may have been penalized by fines or loss of business for refusing to discriminate.  *See Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 187 (2017) ("[T]he purpose of subdivision (6) [included a desire] . . . 'to furnish protection to all persons, whether employers, labor organizations or employment agencies, who find themselves subjected from any source to compulsion or coercion to adopt any forbidden employment practices.'" (citation omitted)); N.Y. Exec. Law § 297(9) ("*Any person* claiming to be *aggrieved* by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages."); *see also Nat'l Org. for Women v. State Div. of Human Rights*, 34 N.Y.2d 416, 420 (1974) (permitting the National Organization for Women ("NOW") to proceed with claims despite lack of specific injured parties because it was a "bona fide recognized organization representing [the class at issue] with a specific interest in the interest in the litigation in question").  Employers will be able to protect employees' interests by both rejecting discriminatory policies in the first instance and by pursuing legal action for any resulting economic harm to their businesses.

Complaint, because Plaintiffs fail to demonstrate the requisite good cause, the Court declines this belated request.

After a Scheduling Order has been entered, motions to amend are subject to Rule 16(b) of Federal Rules of Civil Procedure "'good cause' standard, rather than the more liberal standard of Rule 15(a)." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (affirming district court's finding of lack of good cause for lack of diligence where plaintiffs waited three months to seek leave to amend). In determining whether good cause has been shown, "the primary consideration is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Parker* 204 F.3d at 340 (A finding of "'good cause' depends on the diligence of the moving party."). Districts courts may also "consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 244; *see also Williams v. Town of Hempstead*, No. 16-CV-1992, 2017 WL 4712219, at *4 (E.D.N.Y. Oct. 18, 2017) ("Compliance with Rule 16's good cause standard 'is a threshold matter which may obviate the Rule 15 analysis.'" (citing *Goureau v. Goureau*, No. 12-CV-6443, 2013 WL 1499404, at *2 (S.D.N.Y. Apr. 10, 2013)); *Field Day, LLC v. Cty. of Suffolk*, No. 04-CV-2202, 2013 WL 55697, at *3 (E.D.N.Y. Jan. 3, 2013) (holding that a party "must first satisfy the 'good cause' standard under Rule 16 before an analysis under Rule 15 is conducted"); *Point 4 Data Corp. v. Tri–State Surgical Supply & Equipment, Ltd.,* No. 11-CV-726, 2012 WL 2458060, at *5 (E.D.N.Y. Jun. 7, 2012) ("If the party seeking the amendment satisfies the 'good cause' standard of Rule 16, the court *then* determines whether the movant also meets the liberal standards of Rule 15." (citation omitted)).

Plaintiffs do not attempt to argue good cause. Rather, as discussed earlier, Plaintiffs

argue that they have *always* asserted an attempt claim under section 296(6). However, at no time throughout the proceeding before the Court — prior to the decision granting judgment to Defendants, after the decision granting judgment, or on appeal, — did Plaintiffs allege that the Court failed to consider the attempt claim, even though the Court dismissed Defendants from the action. Had Plaintiffs raised the attempt claim earlier, it appears likely that the Second Circuit would have certified the issue to the New York Court of Appeals, seeking more clarity on the scope of such causes of action under section 296(6). *See Griffin*, 835 F.3d at 283 (certifying three unresolved questions of New York law).

Moreover, Plaintiffs cannot point to any previously unavailable evidence nor any new developments in the law to justify their delay in asserting this claim. Plaintiffs waited more than six years to raise the attempt claim for the first time — years after a jury verdict had undermined their previously asserted theory of liability.[13] Therefore, Plaintiffs have failed to establish good cause. Accordingly, the Court declines to consider Plaintiffs' new attempt claim.[14] *See Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (affirming district court's decision not to consider new claims raised for the first time in opposition to summary judgment (citations omitted)).

---

[13] More than a year and a half had passed even from the January 10, 2012 deadline to amend and the August 15, 2013 deadline for the summary judgment briefing.

[14] Because the Court grants Defendants' motion for the reasons discussed *supra*, the Court declines to consider Defendants' law of the case doctrine and preemption arguments.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiffs' motion for summary judgment and grants Defendants' cross-motion for summary judgment.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 6, 2018
       Brooklyn, New York